Statement of the case.

# E. H. SKAGGS v. MURCHISON & COLEMAN.

(Case No. 1943.)

1. JURISDICTION — AGENCY.— One owning a farm beyond the county of his residence executed a mortgage upon it in 1881, and upon the crops of corn and cotton to be produced thereon during the year 1882, to secure the repayment of advances made to make the crop for 1882 and to supply the farm, and plaintiffs (the mortgagees) were authorized to sell all of said property, including the cotton, to pay the debt. An agent, left by the mortgagor upon the place, to superintend, make the crop and purchase supplies, as needed, under the mortgage, assumed to be unable to save the crop without further advances, and gave another mortgage on the crop of 1882, the proceeds of which were applied to its satisfaction by the agent and mortgagee. Had such proceeds of the crops been appropriated to discharge the mortgage made by the owner, they were sufficient to have discharged it. In a suit by the mortgagee to recover on the original advances which he claimed payment for, and to foreclose the mortgage, the owner pleaded to the jurisdiction. *Held:*

(1) A power of attorney given by the owner to the agent, to mortgage stock upon the farm, executed before the mortgage and given for a temporary purpose, was not sufficient to infer an authority in such agent to execute the second mortgage.

(2) The proceeds resulting from the crop produced in 1882, when paid to the mortgagee, should have been appropriated in payment of the debt secured by the mortgage executed by the owner of the farm.

(3) The proceeds being sufficient to pay that debt, and the owner residing out of the county in which he was sued, the plea to the jurisdiction should have been sustained.

APPEAL from Henderson. Tried below before the Hon. Felix J. McCord.

Appellees brought suit in the district court of Henderson county, Texas, against Skaggs on an open mercantile account for $5,113.65, claiming a balance due of $1,746, and sought to foreclose a mortgage on two thousand four hundred and eighty-nine acres of land in Henderson county.

The petition alleged that Skaggs was a resident of Caldwell county, Texas; that as collateral security for the payment of said indebtedness said defendant gave the deed of trust on the land for the purposes indicated in the syllabus.

"That defendant had failed to comply with the conditions of said mortgage by omitting to pay the sum of $1,746, which became due on the 1st day of January, 1883." The account was attached as an exhibit, and began November 8, 1881, and ran on until April 28, 1883. The charges amounted to $5,113.65.

The credits began February 7, 1882, and ended June 22, 1883. The principal credits were proceeds of cotton delivered to and sold

by plaintiffs and placed to defendant's credit in November, 1882, and March, 1883.

February 22, 1884, plaintiffs filed a supplemental petition, alleging that King and Skaggs were partners in carrying on said farm, and that the items and transactions contained in said account were for money, goods, wares and merchandise sold, delivered and paid to the *defendant and his agents and partners*, at his special instance and request, or to his legally authorized agents and attorneys and partners. That during the years 1881, 1882 and 1883 defendant and W. A. King were partners, and as such had cultivated the Jones farm in Henderson county. That the money and goods in said account were sold and delivered to said *King as such partner*, and were used for the benefit of said farm, which belonged to defendant. That it was understood and agreed, at the time of the execution of the mortgage sued on, and at divers times since that time, and especially at the date of the different credits and payments mentioned in the account attached to the petition, between plaintiffs and defendant, that said payment and credits should be first applied to the payment of that portion of said account which was in excess of the $2,000 mentioned in said mortgage, and that the balance remaining unpaid should be secured by said mortgage.

Skaggs pleaded to the jurisdiction of the court:

1. That he was a resident of Caldwell county, Texas, as alleged by plaintiffs.

2. That he had not agreed to pay the debt in Henderson county.

3. That the $2,000 mortgage sought to be foreclosed was paid off prior to the filing of the petition.

Defendant filed a general demurrer, and specially excepted. He also pleaded a general denial, and payment in money and cotton named as credits in the account sued on and other cotton not accounted for.

That if any such account really exists, that the same was contracted by W. A. King and other persons named in said account for their own use and benefit, and without the knowledge and consent of defendant.

That King was a tenant on the farm of defendant in Henderson county, Texas, as was well known to plaintiffs, and had no authority to contract any debt against this defendant, except to a limited extent.

That if said items were delivered by plaintiffs, as alleged, it was without defendant's authority, and were delivered, if at all, to said King and other evil-minded persons named in the account, in pursu-

ance of, and to carry out, a wicked and fraudulent conspiracy entered into by and between plaintiffs and said King and others named in said account, to whom goods and money were delivered, to cheat, wrong and defraud this defendant, and to enable plaintiffs to wrongfully absorb one hundred and six bales of cotton delivered to plaintiffs by the said King, grown upon defendant's farm for the year 1882.

There was much pleading on both sides, but the case will be sufficiently apparent from the judge's findings, in connection with the opinion.

The district judge submitted his conclusions of the law and the facts of the case in a written opinion. In which, after stating the case, the court submits three propositions:

1. Was King a limited or general agent?

2. Did Skaggs hold him out as his general agent for all purposes connected with his farm, or did King have general authority to contract debts for the specific benefit of Skaggs' plantation in Henderson county; and in determining this question we must be careful to notice the distinction between the limited authority to contract debts to a certain amount and an unlimited authority to contract debts for a specific purpose.

3. Did defendant or King direct the application of the payment to the credit of the mortgage, or did plaintiffs apply same to another debt, or does the law apply the payment to the extinguishment of the mortgage debt? If the mortgage debt is paid off this suit must go out of court.

The court found, in substance, that there was no variance in the account and mortgage sued on and the ones proven.

That it was in proof by King that he gave the orders and they corresponded with the account he kept.

That King was agent for Skaggs to make the purchase under the mortgage.

That defendant made a power of attorney to mortgage his, defendant's, stock on the Jones farm to buy provisions, corn, bacon, cotton seed and so forth; that nothing was said by Skaggs to plaintiffs as to how much King was to get from them; that Skaggs held King out as his general agent for all purposes connected with the Jones farm. And while the defendant Skaggs, perhaps, never intended to give said King authority to contract debts over $2,000, leaving King here, and after executing the first mortgage gave him power of attorney to mortgage the stock, would present King to the world as an agent with full power to contract debts for said farm.

The proof shows that it took the two mortgages ($2,000 and $500) to repair the farm and make the crop, and when, on gathering of the crop, defendant's agent, King, had no money with which to gather the crop, his principal, Skaggs, says he is unable to forward him the money.    Must all the labor be lost?    That Skaggs is liable for any debt contracted to save the crop.

The court said: "We think that if both parties have failed to apply the credits justice would demand that the cotton, which was given as security for the last portion of the debt, should be applied to the payment of that portion of the debt."

The court was of opinion that the mortgage was not paid off, and so found against the defendant's plea to the jurisdiction.  Judgment for plaintiffs for $1,222.88.

*Nix, Storey & Storey*, for appellant, on question of jurisdiction, cited:  Eylar *v.* Read, 60 Tex., 388; Stanley *v.* Westrop, 16 Tex., 205; Proctor *v.* Marshall, 18 Tex., 67; Reese *v.* Medlock, 27 Tex., 123; Jones on Mortgages, vol. 2, side pages 907, 909; Colebrooke on Col. Security, 100, 158, 198; Story on Agency, 17, 18, 133, note 2.

*Manion, Adams & Watkins,* for appellees.

*Hume & Shepard* filed a written argument for appellees for a rehearing.

DELANY, J. COM. APP.— Many questions are raised by the assignments of error and discussed in the brief of counsel for appellant. First among these is that of jurisdiction; for if the court below had no jurisdiction over the person of the defendant, the whole case is at an end.    This will depend upon the question whether the mortgage for $2,000, given by the defendant in December, 1881, was still subsisting and binding upon him.    If so, the court could take jurisdiction and foreclose it, as the land lay in Henderson county. But if the mortgage was paid off and discharged before the filing of this suit, then the court should have sustained the defendant's plea to the jurisdiction, or at least should have dismissed the suit, when the evidence was all in.

The evidence shows that in December, 1881, the defendant rented the farm to one King, and the written contract of tenancy is copied into the record.    By its terms King was to take possession of the place, to repair the houses, fences, etc.; to ditch and drain certain portions of the land; to employ laborers; to procure farming

implements and supplies, and make, a crop of corn and cotton in the year 1882. The expenses were to be paid at the end of the year out of the crop, and of the remainder, after paying the expenses, King was to have one-half. He was also to own one-half of the farming implements that were purchased. But as the defendant had not the ready money, he gave to the plaintiffs the mortgage for $2,000 upon the land and the future crop, in order to procure the necessary advances. He also told the plaintiffs that King would be on the place and would draw the supplies as they were needed. He further gave King a power of attorney to mortgage the work stock in the place for the sum of $250. But before the end of May, 1882, King had executed and delivered to the plaintiffs a mortgage on the coming crop for $1,500, and one upon the work stock for $500, and had agreed with them that the sums advanced by them after that date should be paid before any part of the crop should be applied to the mortgage given by the defendant in December, 1881. Now, the question is, whether King had authority to give these mortgages and to make that agreement.

The court below came to the conclusion that "Skaggs held King out to the plaintiffs as his general agent, for all purposes connected with the Jones farm, and although the defendant Skaggs perhaps never intended to give the said King authority to contract debts over $2,000, yet his leaving King here, and after execution of the first mortgage, giving him a power of attorney to mortgage the stock, would present King to the world as an agent with full authority to contract debts for said farm. It seems to be a correct rule that defendant should suffer the consequences of his negligence, rather than one who had been led to believe King defendant's agent, and advanced money for the benefit of defendant's property. But the court is of opinion that there is another view of this case that would make defendant liable for the acts of King, though King had no authority to contract debts beyond the $2,000 mortgage and the mortgage of the stock. The proof shows that it took the amount of the two mortgages to repair the farm and to make the crop, and when the gathering of the crop commenced, defendant's agent, King, had no means with which to gather the crop. Now, what is the defendant's condition? He has a large crop. What is his agent to do? No money. His principal, Skaggs, said he is unable to forward him money. Must all the labor be lost?" The court was of opinion that, without express authority, the law would imply that Skaggs would be liable for any debts necessarily contracted to gather and save from destruction the property and crop

made. And the court holds that the defendant would be bound for any debts contracted over the amount of the mortgage to market the crop made. The court proceeds to declare that the proceeds of the crop were properly applied to the later expenditures, thus leaving the $2,000 mortgage unpaid, thus deciding that this suit was well brought. Our opinion is that the presiding judge misapprehended the evidence, and we by no means agree with him in his conclusions of law. He seems to have supposed that the power of attorney to mortgage the stock was given some time after the mortgage for $2,000. This is a mistake. The power was given on the 7th day of November, 1881, before King had taken possession of the farm. It was evidently given for a temporary purpose, viz., to enable King, who was about to take possession of the farm, to supply pressing wants until Skaggs could make some permanent arrangement for supplies. This permanent arrangement he made by the $2,000 mortgage which was executed on the 17th of December, 1881, and was to mature on the 1st of January, 1883.

We agree with the court below that Skaggs did not suspect that he was giving to King any power beyond the scope of these papers; and we have been unable to find, in the record, anything from which the plaintiffs could infer such a power. It is so well settled as to be elementary, that powers of attorney and similar instruments are to be strictly construed, and that, under no circumstances, will the principal be bound beyond the plain import of the instrument. Reese v. Medlock, 27 Tex., 120. Nor does the evidence show that the goods and money advanced by the plaintiffs were used for the benefit of the defendant and his property. On the contrary, it seems clear that a large part was appropriated by King to his private purposes, in utter disregard of the rights of Skaggs; and that the plaintiffs were aware of the fact.

Nor can we concur in the last conclusion of the court, that, even in the absence of authority on the part of King, equity would hold the defendant bound to repay the moneys which are shown to have been expended. The record does not show such an emergency as would justify the plaintiffs in interfering to save the property of Skaggs. It does not show that Skaggs, in the fall of 1882, was without money or resources to take care of his property. But it does show that he was ignorant of the large outlays that were being made; that he was thoroughly able to protect his property from destruction; and it is extremely probable that, if he had known what was being done by King and the plaintiffs, he would have interfered and have saved his property in his own way. Our opinion is

that the payments should have been applied to the discharge of the debt secured by the mortgage. And, so believing, we express no opinion upon the other questions which are raised in the case.

We simply decide that, as the mortgage had been paid off and discharged, the court below had no jurisdiction to try the cause.

Our opinion is that the judgment should be reversed and the cause dismissed.

REVERSED AND DISMISSED.

[Opinion adopted February 20, 1885.]