### MILLER v. LOWRIE et al.
### No. 3808.

Court of Civil Appeals of Texas. Texarkana.
March 5, 1930.

Rehearing Denied March 20, 1930.

Chas. L. Brachfield and R. T. Jones, both of Henderson, for appellant.

Futch & Cooper, of Henderson, and E. Newt Spivey, of Texarkana, for appellees.

HODGES, J.

This appeal is from a judgment foreclosing a lien on a tract of land owned by the ap-

pellant. The land formerly belonged to Mrs. E. C. Shaw, from whom it was inherited by the appellant as the only heir. The lien, in the form of a deed of trust, was created by one A. P. Miller, who claimed to act under a power of attorney executed by Mrs. Shaw on April 19, 1920, and was to secure an indebtedness of something more than $7,000 due to H. M. McIver. The notes thus secured were later transferred to the appellees in this proceeding. Mrs. Shaw died in November, 1921. A. P. Miller also died before this suit was filed. Upon default in the payment of the notes, this suit was instituted by the appellees against the appellant. The principal defense presented is a denial of the execution by Mrs. Shaw of the power of attorney under which A. P. Miller claimed to act when he signed her name to the notes sued on, and to the deed of trust. It is also contended by the defendant below that the power of attorney did not, upon its face, confer upon Miller authority to mortgage Mrs. Shaw's land as security for debt. The power of attorney, the validity of which is of controlling importance in this case, is as follows:

"The State of Texas, County of Rusk.

"Know all men by these presents:

"That Mrs. E. C. Shaw, of Tatum, County of Rusk and State of Texas, has this day made, constituted and appointed and by these presents does make, constitute and appoint A. P. Miller, of Tatum, in the County of Rusk and State of Texas, my true and lawful attorney for and in my name, place and stead, to transact any and all of my legal business (sign checks, notes, and settle my personal accounts of whatsoever nature), buy and sell land in and for my name, create loans again any personal or real estate that I may have in my name, buy and sell cattle in and for my name, hereby giving and granting to said attorney my full power and authority to do and perform any and all acts and things whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or substitute shall lawfully do in the premises by virtue hereof.

"In testimony whereof I have hereunto set my hand and seal, at Tatum, this 19th day of April, A. D. 1920.

"Mrs. E. C. Shaw."

The testimony concerning the genuineness of Mrs. Shaw's signature to this instrument was conflicting. In response to an interrogatory, the jury found that Mrs. Shaw did sign the instrument. The court thereupon rendered a judgment directing a foreclosure of the lien on the land as prayed for, but rendered no personal judgment against the appellant, Mrs. Miller.

Counsel for appellant requested the court to submit to the jury the following special issue: "In the exception (inception) of the power of attorney introduced in the evidence in this case did the parties to the power of attorney intend by the use of the words 'create loans again' to give the attorney in fact the power to mortgage real estate belonging to the maker of the power of attorney?"

The refusal to submit that issue is assigned as error. According to the testimony, the power of attorney was written by John R. Doss, a notary public, who also appears to have taken Mrs. Shaw's acknowledgment to the instrument. Doss testified, in part, as follows: "I read that instrument over to and explained it to Mrs. Shaw before it was signed, and I supposed she understood the contents of it when she signed it. Mrs. Shaw signed that instrument willingly. I know when the erasure was made in the fourth line of the typewritten part of that instrument, after the words 'create loans.' That was erased by me when I was writing the instrument, and before she signed it. This instrument is now just as it was when she executed it. I do not now recall how I came to make that erasure, unless I was stuck in the middle of a sentence and decided it didn't go good. I think I started to put in 'mortgages' and I noticed that covered 'loans' and I erased it. The way I account for the space in there is that I took a word out and did not run my machine back. I am not an expert typist or writer nor speller."

On cross-examination he said: "The erasure in this instrument shows that two words have been erased. I started to write 'mortgages' in there. You could not get the word 'mortgages' in that short a space, but I started it. I do not think I started to write the word 'rent' in that space; I started to write 'mortgages' in there again, but that is not what I would ordinarily say. I am sure I did not write 'to create loans.' I read that paper over to Mrs. Shaw and told her what it was, that it was a power of attorney, that he might sign deeds to her land or checks to her bank account, and that it placed him strictly in charge of her business, and whatever it reads there. I have written lots of papers and taken lots of acknowledgments, and I am familiar with that kind of stuff. I never put a notation on this instrument showing that the erasure was made before signing, because I never did that on any of them. I think I started to write the word 'mortgages' in that space. I suppose that word would have been all right if it had been left in there, but I rubbed it out so 'mortgages' wouldn't show. I do not know whether she saw 'mortgages' in there or not, but I had an idea you couldn't mortgage land, and I think it would be superfluous in there. To create loans, to make loans. The intention there was that

he had power to make loans and obtain money for her, but the paper does not say anything about power to mortgage. I did not make that explanation to her. It would have been just as good if I had said to borrow money."

In response to the question, "Don't 'create loans' mean to make loans? If you were making loans for your bank, you don't understand that to mean that you were borrowing money for the bank, do you?" the witness answered, "That is the way I understand it." What the words *"to create loans again"* mean is uncertain. Did they mean to obtain loans against the grantor's real estate, or to make new loans for her benefit? Was the word "again" intended for "against?" This same power of attorney was before this court for consideration on a former appeal. See Lawrie v. Miller et al., 2 S.W.(2d) 561. The record in that appeal shows that the trial court had sustained a general demurrer to the plaintiff's petition, on the ground, apparently, that this instrument did not confer upon the agent the power to execute the mortgage sued on. The judgment was reversed on the ground that the instrument might be aided by parol evidence. It was specifically held that the erasures appearing in the original might be the subject of explanation.

■ The powers conferred by this instrument may be divided into four groups: (1) "To transact any and all of my legal business (sign checks, notes, and settle my personal accounts of whatsoever nature,)" (2) "buy and sell land in and for my name," (3) "create loans again any personal or real estate that I may have in my name," (4) "buy and sell cattle in and for my name." If there is any power to mortgage the property of the grantor, Mrs. Shaw, it is embraced in the words appearing in the third group, *"create loans again* any personal or real estate that I may have in my name." If those terms are to be given their usual signification, the clause is meaningless. The word "loans" is a noun and, as commonly used, means a sum of money borrowed by a debtor from a creditor. It is generally understood in such transactions that the "loan" is made by the lender or creditor, and is procured by the borrower or debtor. To "create" means to make or bring into existence. The power to "create loans" might as easily be construed to mean authority to contract to make loans to another party as to mean authority to contract for loans from another party. It takes both a lender and a borrower to bring a loan into existence. What those words meant in that connection is not aided by those that follow—"again any personal or real estate," etc. If the word "again" was inadvertently written when "against" was intended, that fact might have been shown in the court below by Doss, the man who wrote the instrument and who testified on the trial; but no such explanation was made by him. The witness apparently wrote just what he intended to write, according to his testimony. If the language must stand as written, it cannot be construed as conferring the power upon an agent to mortgage the grantor's land for debt.

■ It is well settled that instruments of this character should be strictly construed against the grant of power. Frost v. Cattle Co., 81 Tex. 505, 17 S. W. 52, 54, 26 Am. St. Rep. 831; Skaggs v. Murchison, 63 Tex. 353; Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912; 1 Clark & Skyles on Law of Agency, § 72. In the case first above referred to the court said: "Powers of attorney, unlike deeds and wills, are to be strictly construed; authority delegated is limited to the meaning of the terms in which it is expressed."

In Skaggs v. Murchison the court uses this language: "It is so well settled as to be elementary, that powers of attorney and similar instruments are to be strictly construed, and that, under no circumstances, will the principal be bound beyond the plain import of the instrument. Reese v. Medlock, 27 Tex. 120 [84 Am. Dec. 611]."

Certainly it cannot be said that the power to mortgage the land of the principal is *"the plain import"* of the language used in the instrument here under consideration.

■ As said by Justice Levy in the former appeal of this case, a party dealing with an agent is chargeable with notice of the contents of the power under which the agent acts, and must interpret it at his peril. Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824.

The validity of this power of attorney is the basis of this suit, and, as such, is made a part of the plaintiff's amended original petition. The judgment giving it effect is, we think, a fundamental error which should be noticed without an assignment.

We therefore conclude that the judgment of the court below should be reversed and judgment here rendered for the appellant.