### OTTO BERGSTROM v. R. W. FRANKLIN ET AL.

#### No. 6210.

**Principal and Agent.**—When an agent in executing a duty to his principal under the terms of his power finds that a literal compliance with his instructions would injure instead of benefiting his principal and defeat the object of the agency, he may in exceptional cases, in the exercise of a sound discretion, assume a power not conferred, and when thus acting in good faith may bind his principal. See opinion for facts illustrating this rule, and for a verdict and judgment resting on no facts to sustain either.

APPEAL from McMullen. Tried below before Hon. D. P. Marr. The opinion states the case.

*J. M. Eckford,* for appellant.—While an agent is in charge of personal property when confronted by unexpected circumstances may make a proper disposition of the property in order to preserve the same, yet no

authority of the principal to the agent to give away, sell, or permanently dispose of the property will be implied, and the charge asked by the defendants and given by the court was erroneous.

*T. S. Archer,* for appellees.

HENRY, ASSOCIATE JUSTICE.—Appellant instituted this suit to recover of appellees thirty-nine head of buck sheep alleged to be of the value of $10 each; for $78, the value of wool taken from them, and $120, the value of their use.

Plaintiff charges that one Nichols had been employed by him to drive said bucks, with a flock of sheep, to a different and distant pasture; that the bucks would not keep with the flock and could not be driven; whereupon Nichols, without any authority from plaintiff, delivered them to one Conklin with the agreement that he should take care of them for plaintiff, and that he should not be required to restore them to plaintiff before November, 1885, Conklin being entitled to their use until said date. That without the knowledge or consent of plaintiff Conklin delivered them to defendants in May, 1885, and they were converted by defendants to their own use and claimed as their own property, and that they refused to deliver them to plaintiff.

Defendants deny that the bucks or their wool were of any value, and say that they were old and diseased, and were left with Conklin by Nichols because they were too weak to travel.

There was a verdict and judgment for defendants.

Plaintiff testified that the bucks were in good condition on 29th January, 1885, about the time when they were delivered to Conklin, and would produce ten pounds of wool twice each year. He testified that in May, 1885, he demanded of defendants the return of the bucks, which they refused. That the wool was worth sixteen cents per pound.

Plaintiff sued out a writ of sequestration, under which the sheriff found four and seized two of the bucks.

There was evidence that many of the sheep died, that their wool was scant and without value on account of their impoverished and diseased condition, and that part of it was delivered to the sheriff, etc.

The evidence of the value of the sheep varies from ten dollars per head to nothing, and there is scarcely any evidence of the quantity or value of the wool.

The court charged the jury that if Nichols delivered the bucks to Conklin without plaintiff's consent, and if afterwards defendants obtained possession of them without plaintiff's consent and converted them to their own use, plaintiff would be entitled to recover.

That if the jury found for plaintiff they should find the value of the bucks as shown by the evidence at the time they were demanded by

plaintiff, and the value of such others as may have been converted by them before that time, unless they had died from natural causes without the neglect or fault of defendants; and against such defendant as was concerned in the conversion.

The court refused to charge at the request of plaintiff that if the jury believed from the evidence plaintiff owned the bucks and hired Nichols to drive them from McMullen County to Kinney County, and Nichols without plaintiff's authority gave away or sold them, and that defendants knew at the time they belonged to plaintiff, they should find for plaintiff the value of the bucks received by defendants, and the value of any wool said defendants got from them and appropriated to their own use.

Appellant complains:

1.   That the court erred in refusing to give the charge asked by him.

2.   That the court erred in its general charge in failing to instruct that plaintiff was entitled to the value of the wool shorn from the bucks by defendants.

The court gave the substance of the charge asked by plaintiff, omitting nothing except the direction to find for plaintiff the value of the wool of the sheep.

The charge if given as requested would have directed the jury to find for plaintiff the value of the wool without making any allowance for taking it from the sheep and preparing it for market, which we do not think is the correct rule, nor are we prepared to say that such charge ought to have been given in this case if it had been relieved of this objection.

The evidence indicates that while Nichols was only authorized by his principal to carry the bucks to a different pasture, he was unable to do that because they either would not or could not go.

He had either to make some disposition of them or leave them to perish.

"Although as a general rule an agent is required to conform to his instructions or authority, yet there may be instances in which a strict and literal adherence to their terms would defeat the object of the agency. There may arise such new and unexpected emergencies and necessities as will justify the agent in assuming extraordinary powers which if done in good faith and with sound discretion will bind the principal." 1 Wait's Act. and Def.   Foster v. Smith, 2 Caldwell, 474; 88 Am. Dec., 604.

The evidence as well as the admissions of plaintiff's own pleadings show that such an emergency arose and was dealt with in good faith by the agent.   It appears that the best, in fact the only, arrangement that he could make for the preservation of the property was to give up its custody and use until the ensuing fall in consideration of its being taken off of his hands.

We think this fairly included the right to take and appropriate the wool during that period.   If it is admitted that Conklin transferred to defendants all the property in the bucks that he had acquired, as the

evidence indicates he did, it still was not an absolute title to the property. While plaintiff had no right to demand their return to him during the time that they had been contracted to Conklin and were being held under a claim consistent with that contract, nor the right to recover for their use or wool while they were being held under said contract, on the other hand defendants had no right to go beyond that and set up an absolute ownership of the property in themselves.

The evidence shows clearly that a larger number of plaintiff's sheep went into the possession of defendants than they have accounted for by death or otherwise. That they set up a claim of absolute title to them which they did not have and repudiated the title of plaintiff to them. As long as there is a single animal traced to defendants' possession under such circumstances and not accounted for so as to show that they are no longer responsible for it, plaintiff is entitled to a judgment in the alternative for the animal or its value.

We think the verdict finding nothing for plaintiff is without any evidence to sustain it, and we therefore reverse the judgment and remand the cause.

*Reversed and remanded.*

Delivered May 14, 1889.