## W. A. H. MILLER ET AL. v. M. AND J. SULLIVAN.

Decided June 3, 1896.

**1. Power of Attorney—One or Several Contracts.**

A power of attorney authorizing the agent to enter into "a contract" for grading a railroad between certain named points, but which also provided, through subscriptions placed in the hands of a trustee, for guaranteeing payment of "contractors" for the work, did not limit the attorney's powers to making one contract for the entire line contemplated, but authorized him to contract, at his discretion, with several persons for the construction, respectively, of different portions of the road.

**2. Same—Grading Railway—Implied Powers—Clearing and Grubbing.**

Authority to contract for "grading" a railroad authorized the attorney to contract for "clearing and grubbing" necessary to the grading, and no more,—and did not support a contract by him for clearing and grubbing the entire right of way, one hundred feet wide.

**3. Construction Contract—Engineer's Estimates as Evidence.**

An agent authorized to contract for grading a railroad made a contract providing for payment on engineer's estimates of the work,—which were to be conclusive. Held, that such estimates were properly admitted in evidence in connection with other proof of their correctness, though such provision of the contract should be held not authorized by the power. (In the opinion of Justice Collard, the power to contract for grading authorized the agent to so provide for ascertaining the amount to be paid, and made the certificate at least prima facie proof of the work done.)

**4. Charge—Weight of Evidence.**

See charge refused (in brief of counsel) held to be on the weight of evidence.

**5. Same—Repetition.**

See charge repeated, held not ground for reversal.

**6. Construction Contract—Refusal to Pay—Abandonment.**

Failure or refusal to pay for part of construction work on railroad as completed, as provided in the contract, justifies an abandonment of the work by the contractor and recovery by him for part performance at contract rates.

**7. Parties—Marriage of Defendant Feme Sole.**

Where marriage of a defendant who was feme sole was suggested before the trial was entered upon, it was error to proceed to judgment against her without making her husband a party.

ON MOTION FOR REHEARING.

**8. Practice on Appeal—Curing Error.**
Where a case was reversed for error affecting only a definite part of the recovery and for failing to make the husband of a defendant a party, the errors were permitted to be cured, pending a motion for rehearing, by remitting the amount of recovery in question and dismissing as to the married woman.

APPEAL from the District Court of Llano. Tried below before Hon. W. M. ALLISON.

There was a former appeal in this case, the opinion of the Court of Civil Appeals thereon being found in Sullivan v. Miller, 24 S. W. Rep., 819. Certified questions on this appeal, as to the construction of the power of attorney, were answered by the Supreme Court. Sullivan v. Miller, 86 Texas, 677. The judgment was then reversed. Upon the rendition of the first opinion upon this appeal, and pending the motion of appellees for a rehearing and their offer to remit and to dismiss the case as to Mrs. Cross, the question as to the power of the court to then permit such dismissal was certified to the Supreme Court and there answered in the affirmative. Miller v. Sullivan, 89 Texas, 480. The judgment of the lower court having been reformed and affirmed upon entering such remittitur and dismissal, a motion for rehearing was made by appellants, and was overruled. Writ of error was then refused by the Supreme Court.

*Chas. L. Lauderdale,* for appellants.—The power of attorney under which the alleged contract was made limited the authority of the attorney in fact to the making of one entire and single contract for the grading of the roadbed for a distance of about seventy-five miles, and the court erred in instructing the jury that defendants were bound by said contract. Crosby v. Huston, 1 Texas, 226; Skaggs v. Murchison, 63 Texas, 353; Frost v. Erath Cattle Co., 81 Texas, 509; Gouldy v. Metcalf, 75 Texas, 455; Darnall v. Lyon, 22 S. W. Rep., 304; Darnall v. Lyon, 85 Texas, 455; Sullivan v. Miller, 24 S. W. Rep., 819; Dart's Vendor and Purchaser, 30-1; Ewell's Evans on Agency, 204-5, 154; Dunlap's Paley's Agency, 192; Mechem, Agency, sec. 366; Rossiter v. Rossiter, 8 Wend., 494; Wood v. Goodridge, 6 Cush., 123; Olyphant v. McNair, 41 Barb. (N. Y.), 446; Bruce v. Duke, 2 Litt. (Ky.), 245; Nixon v. Hyseratt, 5 Johns., 58; Morrison v. Taylor, 6 T. B. Mon. (Ky.), 82; Rice v. Tavenier, 83 Am. Dec., 778 (8 Minn., 248; 27 Cent. Law Journal, 383.)

The power of attorney not authorizing the attorney in fact to bind defendants to pay for any clearing or grubbing on the right of way of said railroad, but only for the grading, the court erred in instructing the jury that defendants were liable to the plaintiffs for the entire work alleged and proved to have been done by plaintiffs. Skaggs v. Murchison, 63 Texas, 353; Frost v. Erath Cattle Co., 81 Texas, 509; Darnall v. Lyon, 85 Texas, 455; Darnall v. Lyon, 22 S. W. Rep., 960; Alexander v. Robertson, 26 S. W. Rep., 41; Deputron v. Young, 134 U.

S., 256; Dunlap's Paley's Agency, 192; Dart's Vendor and Purchaser, 30-1; Ewell's Evans on Agency, 204-5, 236, secs. 3, 154; Mechem's Agency, 366; Rossiter v. Rossiter, 8 Wend., 494; Wood v. Goodridge, 6 Cush., 117-123; Bruce v. Duke, 2 Litt. (Ky.), 245; Nixon v. Hyserott, 5 Johns., 58; Morrison v. Taylor, 6 B. Mon., 92; 6 Howard (U. S.), 162.

The letter of attorney in this case, in which the words conferring the power are ·'to enter into a contract for the grading of" the railway, did not empower the attorney in fact to incorporate in such contract a stipulation constituting the certificate, statement or final estimate of any person presumptive evidence of the quantity, classification and value of the work to be done under a contract made by virtue of such power, and the court erred in admitting over. defendant's objections, the final estimate made by Scarnell and certified by Hardeman, as presumptive evidence of the quantity, classification and value of such work, there being no sufficient evidence that it was correct, and it having been offered and stated that it was offered as such presumptive evidence. Frost v. Erath Cattle Co., 81 Texas, 509; Jester v. Steiner, 86 Texas, 415; Mayor v. Reynolds, 20 Md., 9; McPherson v. Cox, 86 N. Y., 477; Allen v. Inhabitants, 22 Me., 133.

The court erred in refusing the fourth special charge requested by defendants, that for the purpose of determining the amount and value of the work they were not permitted to consider that part of the testimony of the witness Hardeman in which he states the result of the estimates made by him which were based on the profile work done by House, or on work done or estimates made by Scarnell, unless it has been proved by a preponderance of the evidence that such profile work done by House and such work and estimates done and made by said Scarnell were correct and true. Wright v. Thompson, 14 Texas, 563-4; Howard v. Colquhoun, 28 Texas, 134; Merrill v. Railway, 30 Am. Dec., 130; Robertson v. Monroe, 33 N. E. Rep., 1002.

It was error for the court to repeat to jury, in its charge, that "the plaintiffs must have had notice of any understanding which defendants or any of them had among themselves in regard to other persons signing the power of attorney before it should be delivered or acted upon, before it can avail the defendants as a defense, and unless you believe that plaintiffs had notice of such understanding on the part of defendants, or some of them you will disregard all evidence of any such understanding" thus, probably indicating to the jury an opinion of the court that such defense had not been made out. Wheeler v. Mfg. Co., 18 S. W. Rep., 555; Whitsett v. Miller, 1 Posey's U. C., 203; Lee v. Yandell, 69 Texas, 34.

The court erred in charging the jury that the failure of defendants to pay plaintiffs for the ten miles of work completed by them excused plaintiffs from completing the other twenty miles and that though plaintiffs then rescinded and abandoned the contract and work they were entitled to recover against the defendants for the work done at the con-

tract price. Carroll v. Welch, 26 Texas, 148; Perkins v. Locke, 29 S. W. Rep., 1047; Weiss v. Devlin, 67 Texas, 511; 2 Suth., Dam., 516-7; Olmstead v. Bach (Md.), 27 Atl. Rep., 501.

"The court erred in rendering judgment against Mrs. T. C. Beeson, because it was suggested in open court that since the commencement of this suit she had intermarried with G. B. Cross, and he was not made a party defendant." Rev. Stats., art 1206.

By the terms of the said contract a certificate of the engineer in charge of such work that ten miles of the work had been completed and received by him and stating the cost price thereof was made a condition precedent to the right of plaintiffs to demand any payment for such work, and plaintiffs never obtained or presented to defendants such a certificate. Perkins v. Locke, 29 S. W. Rep., 1047; 2 Suth., Dam., 519; Smith v. Brady, 17. N. Y., 173; Prest., etc., v. Coal Co., 80 N. Y., 250; Smith v. Briggs, 3 Denio, 73; Hennessey v. Farrell, 4 Cush., 267.

Counsel for appellants, after the remittitur, dismissal and affirmance upon appellees' motion, filed a motion for rehearing questioning the correctness of the court's construction of and effect given to the power of attorney, and citing: Craighead v. Peterson, 72 N. Y., 279; Bissell v. Terry, 69 Ill., 184; Neal v. Patten, 40 Ga., 363; Woodward v. Campbell, 39 Ark., 580; Sprague v. Cornish, 59 N. H., 161; Lewis v. Commissioners, 12 Kan., 186; N. Y. Steamship Co. v. Harrison, 16 Fed. Rep., 688; Reese v. Medlock, 27 Texas, 120; Field v. Small, 17 Col., 386; Rundle v. Cutting, 32 Pac. Rep., 994; Ross v. Clark, 31 Pac. Rep., 497; Mitchell v. Erie, 15 N. Y. Sup. Ct. Rep., 890.

*McLeary & Stayton,* for appellees.—The power of attorney to Miller, being general in its terms, will support the contract sued on. On construction of power: Gouldy v. Metcalf, 75 Texas, 455; Wright v. Blackwood, 57 Texas, 648; Mechem on Agency, secs. 294, 295, 296. Illustration: Sullivan v. Miller, 86 Texas, 678; Wright v. Blackwood, 57 Texas, 647. Effect of act of agent in construing ambiguous power: Railway v. Johnson, 74 Texas, 263; Railway v. Dilley, 65 Texas, 686; Mechem on Agency, sec. 314, 315. Legal significance of the article "A": Webster's Dic., "A"; Bank v. Copeland, 141 Mass., 266; Snowden v. Guinn, 101 N. J., 458. Ambiguity of expression taken, how: Lawson, Rights, Rem. and Prac., secs. 2319, 2320.

The power of attorney authorizing Miller "to enter into a contract for the grading of said railway" from and to given points, and "giving and granting to our said attorney full power and authority to do and perform every act and thing whatever requisite and necessary to be done in and about the premises," will support a contract to do all things necessary or that grow out of and are incident to the construction of the grade, and it was a question of construction for the court to determine as to whether or not the clearing and grubbing complained of was embraced in the general power to contract for grading. See authorities

under preceding proposition. McAlpin v. Cassidy, 17 Texas, 463;
Lamy v. Burr, 88 Am. Dec., 135.

The attorney in fact of the appellants acting under and by virtue of
a power of attorney authorizing said attorney in fact to "enter into a
contract for the grading of the proposed railway," and "giving and
granting to said attorney full power and authority to do and perform
all and every act and thing whatever requisite and necessary to be done
in and about the premises" was authorized thereby to enter into a con-
tract stipulating how such grading should be done, how the work
thereon should be classified, how, when and at what price such work
should be paid for, how and by whom the amount to be paid therefor
should be ascertained. The certificate of the engineer ascertaining
what work had been done thereunder and what should be paid therefor
was proper evidence to be admitted to prove plaintiff's demand pre-
sumptively, subject to rebuttal by the adverse party, and the trial
court did not err in admitting such certificates for such purpose.

The charge asked if given would have resulted in taking away from
the jury the right to consider a very slight portion of Hardeman's tes-
timony, and if the court erred in refusing to give such a charge such re-
fusal was harmless error, for the verdict of the jury is authorized by
other facts in the case not embraced in Hardeman's evidence, and the
justice of the case having been attained, a judgment rendered on such
a verdict will not be reversed on account of an erroneous charge or re-
fusal to give a charge asked, though correct as a matter of law. Rail-
way v. Delahunty, 53 Texas, 207; Bowles v. Brice, 66 Texas, 724;
Sayles' Civ. Stat., note 3, art. 1318.

The special instruction asked by the appellees and given by the court
was correct in its enunciation of the law and in its application to the
pleadings and facts of the case and it was not error to give the same as
a fuller and more particular explanation of the same matter given by
the court in its general charge. Ins. Co. v. Pruitt, 65 Texas, 126;
McBride v. Bauguss, 65 Texas, 174; Martin Brown Co. v. Wainscott,.
66 Texas, 131.

The suggestion of the marriage of the defendant, Mrs. T. C. Beason,
after the commencement of the suit at a former term of the court, was
made after the case had been called for trial and trial commenced; the hus-
band of said defendant was then present and opportunity given to make
him a party defendant, which was not taken advantage of. Mrs. Bea-
son had answered, and her answer was on file at the trial of this case,
resulting in the judgment herein appealed from. She did not then ex-
cept to the action of the court in rendering judgment against her, nor such
was the matter made a ground for new trial, wherefore we maintain that
judgment, if defective as to said defendant, cannot now be questioned.

Counsel for appellees filed a motion for rehearing, based upon the
propositions maintained in their original brief and accompanied by an
offer to remit the amount of $1579.50, recovered on account of clearing
and grubbing, and to dismiss the case as to Mrs. Cross.

COLLARD, ASSOCIATE JUSTICE.—This is an action by the appellees against appellants for $20,004.09 balance due on a contract alleged to have been made by W. A. H. Miller for himself and as attorney in fact for his codefendants, by which they agreed to pay appellees for grading a certain part of a railroad, the Llano extension of the San Antonio & Aransas Pass Railway, from Fredericksburg to Sandies, a distance of about 30 miles. The petition also claims that defendants in the contract agreed to pay plaintiffs for the clearing and grubbing necessary to complete the road-bed. The suit is brought on the contract, for completing the work of ten miles of the road, for the amount stipulated in the contract,—the certificate of the railroad engineer in charge as provided by the contract showing that such part of the road has been completed and accepted by the company. The statement of the case by appellees correctly sets out the pleadings of the parties. The trial resulted in a verdict and judgment for plaintiffs for the amount sued for, $20,004.09, without interest, but to bear legal interest from the date of the judgment, the 13th day of December, 1894, from which this appeal is taken.

*Findings of Fact.*—We find the facts as follows:
Defendants executed to W. A. H. Miller, January the 28th, the following power of attorney:

"Know all Men by These Presents, That we, the undersigned subscribers, citizens of the said County of Llano, State of Texas, have made, constituted and appointed and by these presents make, constitute and appoint W. A. H. Miller, of said County of Llano, our true and lawful attorney, for us and in our names, place and stead to enter into contract with the San Antonio & Aransas Pass Railway Company for an extension and operation of its railway from some point on the Kerrville extension of said railway, at or near the bridge of same, on the Guadalupe river, thence via the town of Fredericksburg to the town of Llano; and also to enter into a contract for the grading of said railway, from said point on said railway to said town of Llano;—giving and granting to our said attorney full power and authority to do and perform all and every act and thing whatever requisite and necessary to be done in and about the premises as fully to all intents and purposes as we might or could do if personally present and acting;—hereby ratifying all our said attorney may lawfully do or cause to be done in and about the premises; and in consideration of the premises and the contract for the grading of said road, to be entered into by our said attorney, we hereby agree and obligate ourselves respectively to secure our subscription heretofore or hereafter made for the grading and extension of the aforesaid road by good and sufficient bankable security, to be approved and made payable to Moore, Foster & Co., bankers, of Llano, Texas, to be held in trust and to enable them to guarantee the payment

to such contractors for the grading of said road of our respective subscriptions, as follows, viz: That is to say, upon the completion of the grading of each ten miles of said railway, beginning at the town of Fredericksburg, thence to Llano town, to pay upon our said obligations respectively the sum of twenty per cent, and the remainder of such subscription, if any, to be paid upon the completion of said grading of said railway, to said town of Llano, provided said grading of said road be completed to said town of Llano on or before the first day of January, 1890, and in consideration of the premises we further agree and obligate ourselves to secure the right of way for the said railway from the line of Llano County to the town of Llano, and also to secure depot grounds at the town of Llano."

Acting under the foregoing power Miller for himself and his principals executed the contract with plaintiffs below, as set out in plaintiffs' petition, which is as follows:

"Articles of Agreement, made and concluded this 20th day of June, one thousand eight hundred and eighty-nine, between Mike Sullivan, John Sullivan, party of the first part, and W. A. H. Miller for himself, and as attorney in fact for J. R. Green, John C. Oatman, J. S. Scoville, M. C. Roberts, J. A. Leach, R. A. McInnis and Bro., W. T. Moore, Jr., A. E. Moore, John Goodman, J. W. Davis, L. M. Deats, John Walker, J. F. McDonald, J. S. Atchison, R. H. Laning, James S. Bratton, W. T. Swanson, R. F. Holden, G. W. Shaw, C. Breazeale, Ben F. Beeson, Wm. Mathews, Wm. P. Higdon, R. D. Lauderdale, James M. Foster, O. P. Millican, Wm. Simpson, J. Duff Brown, Sr., H. C. Buttery, Miles Barler, I. N. Jackson, E. Haynie, T. C. Beeson, Ben A. Ligon, M. M. Hargis, I. and B. Pessels, and W. J. Forman, parties of the second part, in which said party of the first part agrees, for and in consideration of the payment to be made by the parties of the second part, to do all the clearing, grubbing and grading necessary to complete the road bed of the following named section of the Llano extension of the San Antonio and Aransas Pass railroad of the line of said road, as the same is at present located, or as said line may be changed by the engineer in charge of work; viz: From Fredericksburg to Sandies, about thirty miles.

"All work shall be done in a neat and workmanlike manner, reasonably true to the measured prism, and under the supervision of the engineer in charge, and shall conform to the following general rules and specifications unless otherwise directed, and completed in four months from this date.

"Graduation—Under this head shall be included all excavations and embankments required for the formation of the road bed; and all necessary turnouts, the preparation of such depot grounds as may be required, the digging of all ditches or drains, changing the direction of all irrigation ditches, streams and roads, formation of all road cross-

ings, and all other excavations and embankments in any way connected with or incidental to or necessary in the construction of said railway.

"Excavations—shall be taken out with eighteen (18) feet basis, and slopes varying from one-quarter ($\frac{1}{4}$) horizontal to one (1) horizontal to one (1) vertical, as may be directed by the engineer.

"Waste—When material from excavation is wasted or put in spoil banks, it shall not be deposited within fifteen (15) feet of the slope stakes unless directed by the engineer in charge.

"Embankments —embankments shall be made with twelve (12) or fourteen (14) feet road bed, and sloped at one and one-half ($1\frac{1}{2}$) horizontal to one (1) vertical. All embankments under six (6) feet shall have a road way of twelve (12) feet; above that they shall be fourteen. A berm of six (6) feet shall be left. When necessary in the judgment of the engineer, all material shall be borrowed from one side of the road bed. When directed by the engineer, borrow pits shall be connected by ditches of such dimension as shall be directed, and borrow pits opened to allow free flow of water.

"Classification—There shall be no classification of material of any kind, other than earth, loose rock, solid rock, and embankment borrow, as provided in these specifications.

"Clearing and Grubbing—All timber and brush within fifty feet of the center line shall be removed and burned when required, except such as the engineer may deem of value. The stumps under all embankments of less than two (2) feet in depth shall be cut off close to the ground, and if necessary to be removed by grubbing. In all cases in banks the stumps shall be cut off so that they shall not be nearer the surface than two feet, after the bank has fully settled. In excavations, stumps shall be entirely removed within one foot below such grade.

"Earth Excavations—Shall include clay, sand, stone, gravel, and all other earthy matter or earth containing loose stones or boulders intermixed, which do not exceed in size three (3) cubic feet.

"Loose rock shall comprise: First,—Slate or soft stone, lying in its original stratified position, cemented gravel that can be quarried without blasting, although blasting may be occasionally resorted to, (of this the engineer shall be the judge) or requiring the use of picks and bars, or which cannot be plowed with a strong ten (10) inch grading plow, well handled, drawn by a good six (6) mule team.

"Second,—Detached rock or boulders is masses, excepting three (3) cubic feet and less than one cubic yard.

"Solid rock shall comprise: First,—Rock lying is solid beds or masses in its original or stratified position, which cannot be removed without blasting.

"Second,—Boulders or detached masses of rock exceeding one cubic yard.

"Embankment borrow shall include all material above classified as earth excavations, borrowed from either side of the line within one hundred (100) feet of the center line to complete the embankment. If

in the opinion of the engineer, it is necessary to borrow loose or solid rock to compete the embankment, such material shall be estimated in excavations as herein specified.

"Measurement—will be made by the cubic yard of twenty-seven (27) cubic feet, from line measured prisms indicated by the cross section notes or slope stakes of the engineer. When measurement is made as embankments an allowance of shrinkage will be used in making estimates as follows:—ten (10) per cent on casting or shovel work; five (5) per cent on scraper work, and seven (7) per cent on wagon work. These percentages may be deducted from the true measured prisms; or the embankment may be required to be raised that much higher, at the discretion of the engineer.

"The line of the road or the gradients may be changed if the engineer shall consider such changes necessary or expedient. No claim for an increase of prices in excavation and embankment on the part of the contract will be allowed or considered.

"Whenever the line of the railroad is traversed by public or private roads, commodious passing places must be kept open and in safe condition for use; and in passing through farms the contractor must always keep up such necessary fences as will be needed for the preservation of the crops.

"It is agreed, stipulated and understood, by and between the parties hereto, that if any person be employed in, about, or upon the work should prove to be incompetent or should persistently refuse to do the work in the manner required, or should persistently neglect or slight the work, he may be discharged by the engineer; and such person shall not be employed again upon the work unless by written consent of the engineer.

"No charge shall be made by the contractor for hindrances or delay for any cause in the progress in any portion of the work in this contract, but it may entitle him to an extension of time allowed for completing the work, sufficient to compensate for the detention, to be determined by the chief engineer; provided, he shall give the engineer in charge immediate notice in writing of the cause of the detention.

"Nor shall any claim be allowed for extra work unless the same shall be done in pursuance of an order from the engineer in charge and the claim made at the first settlement after the work was executed, unless the chief engineer, at his discretion, shall direct the claim or any such sort as he may deem just and equitable to be allowed.

"And the parties of the second part do promise and agree to pay to the said parties of the first part, for completing this contract, as follows, viz: for clearing and grubbing per acre, fifteen dollars; for earth excavation, 11 cents per cubic yard, eleven cents; for embankment borrow, 11 cents per cubic yard, eleven cents; for loose rock excavation, 35 cents per cubic yard, thirty-five cents; for solid rock excavation, 75 cents per cubic yard, seventy-five cents. All material placed in embank-

ment, without regard to its character, shall be eleven cents per cubic yard.

"100 feet is free haul, and all haul over 100 feet shall be paid for at rate of one cent per cubic yard.

"And said party of the first part agrees to make his grade of work conform to the specifications set out in contract between the San Antonio and Aransas Pass Railway Company and W. A. H. Miller, dated March 12, 1889.

"The parties of the second part agree to pay party of the first part, on the completion of each continuous ten miles of the grade, as the same is received and cost price certified to by the engineer in charge.

"It is further covenanted and agreed between the said parties that the said party of the first part shall not let or transfer this contract to any person without the written consent of the second party, but will give personal attention to the work.

"It is further agreed that the work embraced in this contract shall be commenced within five days from this date and prosecuted with such force as the engineer shall deem adequate to its completion within the time specified; and if at any time the said party of the first part shall refuse or neglect to prosecute the work with a force sufficient within the opinion of the said engineer for its completion within the time specified in this agreement, then, and in that case, the engineer in charge, or such other agent as the engineer may designate, may proceed to employ such a number of workmen, laborers, and overseers, as may, in the opinion of the said engineer, be necessary to insure the completion of the work within the time hereinbefore limited, at such wages as he may find it necessary or expedient to give; pay all persons so employed, and charge over the amount so paid to the party of the first part, as for so much money paid to the party of the first part on his contract; or the said engineer may, at his discretion, for the failure to prosecute the work with an adequate force, for non-compliance with his directions in regard to the manner of constructing it, or for any other omission or neglect of the requirements of this agreement and specifications on part of the party of the first part, declare this contract or any portion or section embraced in it, forfeited, which declaration and forfeiture shall exonerate the said party of the second part from any and all obligations and liabilities arising under this contract, the same as if this agreement had never been made; and the reserved percentage of ten per cent upon any work done by the party of the first part may be retained forever by the said party of the second part. And it is mutually agreed and distinctly understood that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same; and each and every one of said parties do hereby waive any right of action, suit or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of said engineer shall, in the nature of an award, be final and conclusive on the rights and claims of said parties.

"It is further agreed and understood that the engineer shall have the right to regulate, from time to time, the wages of labor upon the line of the work, so as to maintain a proper distribution of the forces and prevent the injurious effects of competition among contractors for hands.

"It is further agreed that the terms of this contract shall be binding upon both parties for all work done upon the Llano extension of the San Antonio and Aransas Pass Railway until a new contract is signed, and that parties of the second part can cancel this contract at any time by giving party of the first part notice for a period of fifteen days in advance and paying in full for all work done.

Signed, sealed and delivered ......, State of Texas, this the 20th day of June, ...... One thousand eight hundred and eighty-nine.

J. SULLIVAN (Seal),

M. SULLIVAN (Seal),

W. A. H. MILLER (Seal),

for self and as Attorney in fact for

J. R. Green, John C. Oatman, J. S. Scoville, M. C. Roberts, J. A. Leach, R. A. McInnis & Bro., W. T. Moore, Jr., A. E. Moore, John Goodman, J. W. Davis, L. M. Deats, John Walker, J. F. McDonald, J. S. Atchison, R. H. Laning, J. S. Brattan, W. T. Swanson, R. F. Holden, G. W. Shaw, C. Breazeale, Ben F. Beeson, Wm. Mathews, Wm. P. Higdon, R. D. Lauderdale, James M. Foster, O. P. Millican, Wm. Simpson, J. Duff Brown, Sr., H. C. Buttery, Miles Barler, I. N. Jackson, E. Haynie, T. C. Beeson, Ben A. Ligon, M. M. Hargis, I. and B. Pessels and W. J. Forman."

On the 12th day of March, 1889, Miller, for himself and as attorney in fact for defendants, made a contract with the San Antonio and Aransas Pass Railway Company as follows:

"The State of Texas,
"County of Llano.

"This agreement this day entered into by and between the San Antonio and Aransas Pass Railway Company, hereinafter styled party of the first part, and W. A. H. Miller, acting for himself, and J. R. Green, J. S. Scoville, John C. Oatman, M. C. Roberts, J. A. Leach, W. T. Moore, Jr., R. A. McInnis & Bro., A. E. Moore, John Goodman, J. F. McDonald, J. W. Davis, J. S. Atchison, L. M. Deats, R. H. Laning, John Walker, James S. Bratton, W. T. Swanson, J. Duff Brown, Sr., R. F. Holden, H. C. Buttery, G. W. Shaw, Miles Barler, C. Breazeale, I. N. Jackson, Ben F. Beeson, E. Haynie, Wm. Mathews, T. C. Beeson, Wm. P. Higdon, Ben A. Ligon, R. P. Lauderdale, M. M. Hargis, James M. Foster, I. and B. Pessels, O. P. Millican, Wm. Simpson, W. J. Forman, all of Llano County, Texas, acting herein by and through their attorney in fact W. A. H. Miller, hereinafter styled parties of the second part, witnesseth:

"That whereas the parties of the second part are desirous of securing an extension of the San Antonio and Aransas Pass Railway from a point on its constructed line in Kendall County, Texas, to the town of Fredericksburg, in Gillespie County, to the town of Llano, in Llano County, and believe they will be benefited by such construction, therefore it is agreed:—

"First—The line of railway hereinafter provided to be built shall commence at a point on the present constructed line of the San Antonio and Aransas Pass Railway, in Kendall County, south of Comforts and on the east side of the San Antonio river, the exact location to be determined by the chief of construction or engineer in charge for the party of the first part, and extend thence, by the shortest practicable route, to a point suitable for depot grounds within three-quarters of a mile of the present court house in the town of Fredericksburg, and extending thence in continuation of such line, by the shortest practicable route, to some point suitable for depot grounds within three-quarters of a mile of the present court house of the town of Llano. The entire line to be surveyed and located by the parties of the second part but the alignment, as well as the selection of depot grounds at Fredericksburg and Llano, to be approved by the party of the first part, through its chief of construction or engineer in charge, before work shall begin thereon, and no part of the line shall be adopted until so approved by the party of the first part. The line must be located as direct as practicable and no curvature must be used over four degrees, except in such places as cannot be avoided, when a limit of eight degrees will be allowed. The maximum of grades shall be 1.90 per cent, compensated on curves (rate of compensation to be 0.045 of per cent per degree of curvature), except on the hill between the Guadalupe river and the Perdinales creek valley, for a distance of about three miles, a maximum of 2 per cent compensated as above will be allowed.

"Second.—The parties of the second part agree and promise to do or have done at their own expense all surveying, locating and engineering, of every kind and character, requisite or necessary, from the surveying of the route to the final completion of the grade, and shall employ and pay all engineers or other labor that may be required in such work. But should any engineer so employed by them be objectionable to the party of the first part, he shall be promptly discharged if requested by the chief of construction or engineer in charge for the party of the first part.

"Third.—The parties of the second part agree and bind themselves to secure and convey or cause to be conveyed to the party of the first part the right of way required for such line, to be not less in any place than one hundred feet in width (fifty feet on each side of center of track), the necessary ground for "Y," depot and side track at the junction of this proposed route and the present constructed line, and depot grounds four hundred (400) by two thousand (2000) feet at the towns of Fredericksburg and Llano,—the said right of way and depot grounds to

be secured and paid for by the parties of the second part, but convey-ances therefor to be made direct to the party of the first part. Where condemnation proceedings are necessary they shall be conducted in the name of the party of the first part, but all costs and expenses thereof to be borne by the parties of the second part.

"Fourth.—The parties of the second part agree and bind themselves to do all clearing and grubbing for all said line and sidings, turnouts, switches and "Ys," removing all brush and timber within fifty feet from center line.

"Fifth.—The parties of the second part shall do all grading necesary for the proper construction of such road and finish and complete same at their own cost and expense, ready for the laying of the track, and such grade shall be in every manner finished and completed in a sub-stantial workmanlike manner. All embankments not over six feet high to be made twelve feet wide, and those over six feet high to be four-teen feet wide on top, with slope of $1\frac{1}{2}$:1. Cuts to have a road bed of ten feet width, with ditches four feet wide on each side, making the cuts eighteen feet wide at the bottom, with slopes 1:1, except in such cases where the material will slide, when slope must be made according to the material. In rock cuts slopes may be made as steep as $\frac{1}{4}$:1 when there is solid rock. In all cases slopes in cuts must be made according with the judgment of the engineers in charge for the party of the first part. In all cases where the party of the first part puts in rock cul-verts the embankments over them shall be made by the parties of the second part. Surface ditching must be made whenever required, and all necessary drains and road crossings must be put in as may be directed by the engineer in charge for the party of the first part.

"Grading, in like manner, to be done and completed ready for track laying on "Y," at junction of present constructed line and this pro-jected road, and for all side tracks, switches and turnouts where they may be required and deemed necessary by the party of the first part. Any rip-rap or work of like character deemed necessary by the chief of construction or engineer in charge for the party of the first part shall be done and performed by the parties of the second part. Where consid-ered necessary by the party of the first part the grade shall be finished by the parties of the second part in approach to bridges and openings after such bridges or tressels have been constructed by the party of the first part.

"Sixth.—The grade shall be fully completed as may be required by the party of the first part, and no openings left except where indicated by the party of the first part, and then only in such dimensions as it may desire.

"Seventh.—When the grade is finished and paid for and all right of way fully settled and conveyed to the party of the first part free of cost or expense to it, the said party of the first part shall then put in neces-sary culverts or bridges where required, and lay track over the line herein provided for, and construct and maintain depots at the said towns

of Fredericksburg and Llano on the depot grounds as herein above provided for, and equip and operate such line of road.

"Eighth.—When the parties of the second part have fully completed the grade and paid for all right of way and depot grounds from the junction to Fredericksburg and turned same over to the party of the first part clear and ready for track laying, the party of the first part shall accept such part and begin work of bridging and track laying thereon and carry such work to completion to Fredericksburg within a reasonable time.

"Ninth.—The parties of the second part agree and bind themselves to begin the work of grading at the junction with the present constructed line, and fully complete same therefrom to the town of Llano, and turn same over to the party of the first part free and fully paid for, within twelve months from this date, and the party of the first part agrees and binds itself to complete track laying thereon to the Llano depot grounds within six months after the completed grade shall be turned over to it by the parties of the second part fully paid for and clear from all claims for labor as well as right of way and depot grounds. And should the parties of the second part fail to secure right of way, depot grounds and complete grade, and pay for same as herein above provided, within twelve months, then the party of the first part may at its option claim a forfeiture to itself of such right of way, depot grounds and grades as the parties of the second part may have acquired or completed, or may hold said parties of the second part to a strict compliance of this contract; and should said party of the first part fail to complete their road to Llano, Llano County, within six months after the parties of the second part have completed the grade of said line to Llano and turned it over to the party of the first part free from debt, and operate its said road, then the parties of the second part may at their option claim a forfeiture of all such right of way, depot grounds and grades as the party of the first part has not occupied, or may hold party of the first part to a strict performance of this contract.

"Tenth.—The parties of the second part having become possessed of and being the holders of certain receipts issued by the party of the first part to sundry persons for money received by and paid it on account of subscription to bonds on its present North West Extension, which receipts are more particularly described and designated in schedule hereto attached marked exhibit 'A,' and amounting in the aggregate to the sum of ———— dollars ($ ————) therefore, for the purpose of aiding the parties of the second part in the performance of this contract, the party of the first part hereby obligates and binds itself to redeem and pay such receipts as described in schedule attached, at the rate of three thousand dollars ($3000.00) for every section of ten miles of grade completed by the parties of the first part, and upon the completion of the grade from the junction to Llano town it agrees to redeem and pay the balance of such receipts not theretofore redeemed under above provision, provided that the receipts enumerated are deposited at the San

Antonio National Bank subject to payments above provided to be made, and the said bank is here authorized and directed to hold such receipts until the final completion of the work, except where parts thereof shall be paid by the party of the first part, when for amounts so paid receipts for like amounts shall be surrendered to the party of the first part.

"Such receipts as may be paid and redeemed by the party of the first part before the completion of the grade shall be in the order of receipts enumerated in Exhibit 'A' hereto attached, nothing being herein intended as an acknowledgment by the party of the first part of any liability on account of such receipts or receipts of like character that may be outstanding, except that it shall redeem the receipts herein described, as above described, as aid and contribution to the parties of the second part in performing their contract, and are only recognized and admitted for the purpose of this contract.

"Signed in duplicate this 12th day of March, A. D. 1889.

"SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY,
"By U. Lott, President.

"Attest:  REAGAN HOUSTON, Secretary.

"W. A. H MILLER, for myself.

"J. R. Green, John C. Oatman, J. A. Leach, J. S. Scoville, M. C. Roberts, W. T. Moore, Jr., R. A. McInnis and brother, A. E. Moore, John Goodman, J. F. McDonald, J. W. Davis, J. S. Atchison, L. M. Deats, R. H. Laning, John Walker, James S. Bratton, W. T. Swanson, J. Duff Brown, Sr., R. F. Holden, H. C. Butterly, G. W. Shaw, Miles Barler, C. Breazeale, I. N. Jackson, Ben F. Beeson, E. Haynie, Wm. Mathews, T. C. Beeson, Wm. P. Higdon, Ben A. Ligon, R. D. Lauderdale, M. M. Hargis, James M. Foster, I. and B. Pessels, O. P. Millican, Wm. Simpson and W. J. Forman, by W. A. H. Miller, attorney in fact, parties of the first part."

Division Civil Engineer, R. F. Scarnell of the railway company, made a final estimate of the work done by plaintiffs under their contract, which was approved by T. J. Hardeman the railway company's civil engineer in charge, which shows the work done by plaintiffs and the amount due therefor at the prices fixed by the contracts, the total amount due, including clearing and grubbing, being, as so certified, $22,704.04, which, credited by the amount paid by defendants, leaves the balance due of $20,004.09, the amount sued for and for which judgment was rendered.  It was shown that the estimate of the work so certified by the engineer in charge was correct according to measurements made, the value of which at the prices stipulated in the contract amounted to the sum as before stated, which credited by the amount paid left the amount due $20,004.09.

The contract required plaintiff to clear and grub "all timber and brush within fifty feet of the center line" the timber and brush to be removed and burnt when required, except such as the engineer might deem of value.

The amount claimed in the petition for clearing and grubbing, shown in the final estimate made by the "engineer in charge" and the amount recovered therefor was $1579.50.

*Opinion.*—The court instructed the jury that defendants were bound by the contract made by Miller, if they executed the power of attorney and if Miller signed the contract in their behalf.

Appellants contend that this charge is erroneous, because the power limited Miller to the making of but one contract for grading for the entire distance, from the initial point to the terminus of the extension, a distance of 75 miles, and because the power only authorized him to make such contract with the railway company.

The Supreme Court in speaking of this power, on the former appeal of this case (86 Texas 677) analyzed it and declared that it empowered Miller to contract first with the railway company to extend and operate the road to Llano, and "to make any contract for grading the road between the points named which the makers of the instrument themselves could make." Id., 679. The language of the power is "to enter into a contract for grading of said railway from said point on said railway to said town of Llano." Appellants contend that as used in the power "a contract" means only one contract, and that the context shows that this contract must be made with the railway company. There is another part of the power which we think determines both of these questions against appellants' contention. In providing for security in part in favor of the persons or person who would undertake the contract for grading the road, the instrument says: "And in consideration of the premises and the contract for the grading of said road to be entered into by our said attorney we hereby agree and obligate ourselves respectively to secure our subscriptions heretofore or hereafter made for the extension of the aforesaid road by good sufficient bankable security, to be approved and made payable to Moore, Foster & Co., bankers, of Llano, Texas, to be held in trust and to enable them to guarantee the payment to such contractors for the grading of said road." This clause of the power shows the intent of the makers in granting the power to contract for the grading; that it was contemplated that there would be more contractors than one and more than one contract for the grading, and that the railway company was not to be the sole contractor. Evidently the power intended to empower Miller to contract with as many persons as required, or as were necessary to grade the entire length of the extension of the road to Llano, and that he could make such contracts at his discretion and with persons of his election.

The fact that plaintiffs' contract did not cover the initial point of the extension, or that it covers a part of the line between its terminal points is of no consequence. The initial point was covered by another contract, and the attorney had the power to contract as he did for the construction of the middle part of the line of road, as well as the terminal points. The power provides for such a contract and no doubt it was

intended and expected that he would cover the entire distance with several contracts, some or one of which would necessarily apply to parts between the termini.

The contract executed by Miller with plaintiffs bound them to do all the clearing, grubbing and grading necessary to complete the roadbed. "Clearing and grubbing," as the contract specifies, meant that "all timber and brush within fifty feet of the center line shall be removed and burned when required, except such as the engineer may deem of value." The court instructed the jury that defendants would be liable for the clearing and grubbing as contracted for at the contract price, which was $15 per acre. The value of this work, as declared in exhibit to the petition, as shown by the proof, and as recovered by plaintiffs was $1579.50.

Appellants say it was error to allow, by charge of the court, a recovery for the clearing and grubbing, as the power of attorney did not authorize a contract for it, but allowed only a contract for grading. We think this contention of appellants is correct. The power only warranted a contract for grading. This would include all clearing and grubbing necessary to the grading but no more,—not necessarily fifty feet on each side of the center line of the roadbed. The testimony does not show that fifty feet on each side of the center of the road was necessary to the proper grading authorized and done under the contract. It was a question of fact, and if there had been testimony to the point it should have been left to the jury by appropriate instruction. It was not correct for the court to assume the necessity of so much clearing and grubbing as provided for in the contract. The evidence should have discriminated between the amount of the clearing and grubbing that was necessary to the proper grading of the road and that which was not so necessary, or have shown that so much was necessary. Plaintiffs could recover for all work done including such clearing and grubbing as was required to carry out the contract for grading at the contract price, as this would be included in the power to contract for the grading. We cannot say, nor could the court below, that the fifty feet on each side of the center of the road as contracted for was required to complete the grading. Skaggs v. Murchison, 63 Texas, 353; Frost v. Erath Cattle Co., 81 Texas, 508; McAlpin v. Cassidy, 17 Texas, 463; Railway v. McKinney, 55 Texas, 183, 184. The clearing and grubbing not necessary to the grading was not such an incident to the grading as authorized the agent to contract for it.

3. The court admitted in evidence, over objection of defendants, the classification and value of the work done by plaintiffs under the contract sued on, under the final estimate made by R. F. Scarnell, division engineer of the railway company, certified to or "O. K'd." by T. J. Hardeman, engineer in charge, as presumptive evidence of the amount of work and value thereof done by plaintiffs under their contract.

The contract sued on stipulated that defendants should pay the contractors "on completion of each continuous ten miles of the grade" as

the same is received and cost price certified to by the engineer in charge. The contract also contained the following: "And it is mutually agreed and distinctly understood that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same; and each and every one of the said parties do hereby waive any right, action, suit or suits or other remedy in law or otherwise by virtue of said covenants, so that the decision of said engineer shall in the nature of an award, be final and conclusive on the rights and claims of said parties. The testimony of Scarnell shows that the final estimate of the amount and value of the work at the contract prices was correct, according to actual·measurements made by him. The testimony of Hardeman the engineer in charge for the railway company is not so definite, but taken with that of Scarnell, which is not disputed, it may be said that the final estimate was proved to be correct. We think the final estimate was admissible along with the testimony of Scarnell and Hardeman, and that there was no error in allowing it to be placed before the jury. The court did not instruct the jury that the final estimate certified to by Hardeman was conclusive or presumptive evidence, but admitted it in evidence with the testimony of the two engineers. As before said it was admissible in this manner. The individual opinion of the writer is that Miller, under the power of attorney, was empowered to bind the principals to pay the contractors for the work at stipulated prices, according to the final estimate of the engineer in charge. The power to contract for the grading included the power to make the certificate of the engineer at least prima facie proof of the amount of work done. It was an incident of the power to make the contract a complete contract, which would be implied from the main object of the power. The contract could under the power provide for the ascertainment of the amount to be paid. "Every agency carries with it or includes in it as an incident all the powers which are necessary or proper or usual as a means to effectuate the purposes for which it was created and none other." McAlpin v. Cassidy, 17 Texas, 463, and "In this respect there is no distinction whether the authority given to an agent is general or·special, express or implied." Id.; Railway v. McKinney, 55 Texas, 183; Ryan & Co. v. Railway, 65 Texas, 15; 63 Texas, 348; 74 Texas, 40; 1 White & W. C. C., 1124; 55 Texas, 155; Mechem on Agency, secs. 282-311. On this point I speak only my individual opinion, the majority of the court deeming it sufficient under the assignment to say that the final estimate was admissible in connection with the testimony of the two engineers.

4. It would have been proper for the court to instruct the jury in case of finding for plaintiffs to find only such amount as was shown to be done at the contract prices, not including the clearing and grubbing not necessary to the grading. It was not error to refuse the charge asked by defendants upon this subject because it was in some parts of it upon the weight of evidence.

5.    Appellants insist that the court erred in repeating at plaintiffs' request an instruction as to the necessity of notice to plaintiffs of an understanding between defendants who signed the power in regard to others signing it before it should be delivered or acted upon, the court having correctly charged upon the subject.

The court should be careful not to repeat a correct charge so as to give it undue prominence.    Having once stated the principle clearly, as should be done, a repetition of it might unduly influence the finding of the jury by making it too prominent, thus indicating to the jury that the court entertained this view of the case.    But we do not find that the court repeated the charge "at the request of plaintiffs" as assigned, though we do find a repetition of the principle once charged in the court's general charge.    The assignment of error is not well taken.

6.    There was no error in instructing the jury that the failure or refusal of the defendants to pay plaintiffs for the ten miles of work completed (if it was completed) would excuse them from completing the other twenty miles of the road.

The contract obligated defendants to pay for the work on the completion of each ten miles of the grading at the prices stipulated, on certificate of the engineer in charge.

The refusal of defendants to comply with their contract, and to recognize their obligations under it authorized plaintiff to treat it as rescinded for the remainder, and sue for the work done at the contract price.

7.    Mrs. Beeson, a feme sole, was an original party defendant, but pending the suit she intermarried with one G. B. Cross.    It was error to proceed with the trial without making Cross a party, the fact of marriage having been made known to the court after the parties announced, but before the trial in fact had commenced, and it was error to render judgment against her as a feme sole.    Reed v. Cavitt, 30 S. W. Rep., 575.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 15, 1896.

ON MOTION OF APPELLEES FOR REHEARING.

COLLARD, ASSOCIATE JUSTICE.—In our opinion the motion for rehearing presents no good reason requiring us to recede from any part of our former opinion in this cause.    Appellees propose to enter a remittitur in this court to the amount of $1579.50, the value of the clearing and grubbing sued for, and recovered, and also ask us to dismiss the case as to Mrs. Beeson, who was shown to have intermarried with G. B. Cross, but against whom judgment was rendered as a feme sole.

The remittitur and the dismissal asked, will relieve the judgment of all the error found and determined by this court and the Supreme Court

having decided that such proceeding can be had in this court, it is therefore ordered that the suit be dismissed as to Mrs. Cross, and that the remittitur be entered as requested, and the judgment of the lower reformed accordingly, affirming the same as reformed.    In other respects the motion is overruled.

*Remittitur entered, case dismissed as to Defendant Cross and judgment reformed and affirmed.*

Opinion delivered June 3, 1896.

ON MOTION OF APPELLANTS FOR A REHEARING.

COLLARD, ASSOCIATE JUSTICE.— *Opinion.*—The motion of appellants for a rehearing, in our opinion, must be overruled.

It is earnestly insisted by counsel for appellants that we should have sustained the seventh assignment of error, which is that the court below committed error in charging the jury that the failure of defendants to pay plaintiffs for the ten miles of work completed excused plaintiffs from completing the other twenty miles of grading, and that, though plaintiffs abandoned the further performance of the contract, they were entitled to recover against the defendants for the work done at the contract price.

The contract made by Miller with plaintiffs stipulated: "The parties of the second part agree to pay the party of the first part, on the completion of each continuous ten miles of the grade, as the same is received and cost price certified to by the engineer in charge."

Appellants' position is that the power of attorney to Miller by appellants limited the agent, and that he exceeded his powers in the stipulation that his principals agreed to pay for each ten miles of the road as received and certified by the engineer in charge.    To support this contention they present the following clause of the power of attorney: "And in consideration of the premises and the contract for the grading of said road to be entered into by our said attorney, we hereby agree and obligate ourselves respectively to secure our subscriptions heretofore or hereafter made for the grading and extension of the aforesaid road by good and sufficient bankable security, to be approved by and made payable to Moore, Foster & Co., bankers, of Llano, Texas, to hold in trust and to enable them to guarantee the payment to such contractors, for the grading of said road, of our respective subscriptions, as follows, viz:    That is to say, upon the completion of the grading of each ten miles of said railway, beginning at the town of Fredericksburg, thence to Llano town, to pay upon our said obligations respectively the sum of twenty per cent, and the remainder of such subscription, if any, to be paid upon the completion of said grading of said railroad to said town of Llano, provided said grading of said road be completed to said town of Llano on or before the first day of January, A. D. 1890."

Appellants insist that this clause in the power relates to the payment to be made to the contractors on completion of each ten miles of the grading, and limits the power of the agent to make only such contract. We think it relates to payment to be made on the subscriptions they had made and that should be subsequently made,—a collateral undertaking to secure the amount subscribed in order to enable Moore, Foster & Co., bankers, to guarantee payment to the contractors. This is the construction placed upon the clause in the power by the Supreme Court in answer to question certified to that court. Sullivan v. Miller, 86 Texas, 677.

The defendants below did not pay twenty per cent of the amount for constructing the ten miles of road. They paid $2700. Twenty per cent of the amount of cost of construction of the ten miles would be over $4200.

Appellants say this court erred in allowing remittitur of $1579.50, because the contract the agent undertook to make was not severable and could not be adopted in part and repudiated in part.

The items for the work were distinct and were to be paid for in distinct stated prices; the clearing and grubbing was a separate undertaking, for which appellants, by the terms of the contract, were to pay $15 per acre. The amount remitted by this court was the exact amount sued for for clearing and grubbing, the exact and only amount proved, and the exact amount recovered by the judgment of the lower court for that item. The contractors built and completed ten miles of the grading in full compliance with the terms of the contract, from Fredericksburg north, which, at contract price for the various items of work, amounted to $22,704.09, from which deduct the $2700 paid and the $1579.50 for clearing and grubbing, and the amount obtained is the amount for which the judgment of the lower court should have been, and for which we allowed the judgment to stand.

We think the remittitur was properly allowed, it being certainly ascertained from the contract, the proof of performance and the judgment of the lower court.

Other grounds for rehearing need not be noticed, none of them should be sustained, and the motion is overruled.

*Motion overruled.*

Opinion delivered November 18, 1896.

Chief Justice Fisher did not sit in trial of the motion.

Writ of error refused.