MEYER et al. v. EVERETT PULP & PAPER CO.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 2,023.

1. **Evidence** (§ 441*)—**Written Contract**—**Prior Parol Agreements**.
   In general, all prior negotiations whether in writing or by parol or partly in each, looking to the consummation of a contract between the parties, are merged in the agreement, so that prior writings or proposals and statements of the parties are incompetent and inadmissible to vary the consummated agreement.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 2030–2051; Dec. Dig. § 441.*]

2. **Evidence** (§ 455*)—**Written Contract**—**Prior Parol Agreements**.
   Where a written contract provided for the sale of China clay "P. X. Y." brand, at a specified sum per cwt., letters written between the parties prior to the consummation of the contract, indicating that the letters "P. X. Y." were used to designate a sample of English China clay which was then submitted to the buyer for inspection, and not to designate any brand of China clay known to the market or in commerce, were admissible.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2104–2108; Dec. Dig. § 455.*]

3. **Sales** (§ 73*)—**Contract**—**Construction**—**Sale by Sample**.
   A contract provided for the sale of from 300 to 400 tons of China clay in casks, "P. X. Y." brand, at 70 cents per hundredweight, ex ship at Seattle, Wash., and letters passing between the parties prior to the execution of the contract indicated that the letters "P. X. Y." referred to a sample of clay, and not to a brand known in the market or to commerce. *Held*, that the contract evidenced a sale by sample, and not a certain quantity of material by a designation known to the trade.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 188; Dec. Dig. § 73.*]

4. **Sales** (§ 358*)—**Sale by Sample**—**Evidence**.
   In an action on a contract for the sale of China clay by sample, evidence that a part of the clay which was rejected contained a larger per-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

centage of grit than the sample, which rendered the paper, in the manufacture of which it was used, spotted, and unmerchantable, and that so large percentage of grit had the effect to wear out quickly the appliances for manufacturing the paper and render the manufacture of the finished article much more expensive, was admissible to show that the clay rejected did not conform to the sample.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049–1055; Dec. Dig. § 358.*]

**5. TRIAL (§ 404*)—FINDING BY COURT—EFFECT.**

Where, in a suit on a contract for the sale of China clay, a part of which defendant had rejected as not complying with the sample, defendant tendered and paid into court the price of the clay accepted and denied any further liability, and the court made a general finding that plaintiff should take nothing except the money deposited, such conclusion was tantamount to a general verdict of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 957–962; Dec. Dig. § 404.*]

**6. APPEAL AND ERROR (§ 695*)—EVIDENCE—REVIEW—RECORD.**

The sufficiency of the evidence to sustain the trial court's conclusion will not be reviewed where the record does not contain all the evidence adduced at the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911–2915; Dec. Dig. § 695.*]

**7. SALES (§§ 168, 271*)—SALE BY SAMPLE—IMPLIED WARRANTY—INSPECTION BY BUYER.**

A sale by sample is tantamount to an undertaking on the part of the seller that the goods sold shall be similar both in nature and in quality to the sample exhibited, importing an implied warranty to that effect and an implied condition that the buyer shall have a reasonable opportunity to determine for himself whether the goods in fact are the same in kind and quality as the sample.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408, 769–771; Dec. Dig. §§ 168, 271.*]

**8. SALES (§ 168*)—SALE BY SAMPLE—RECEIPT OF GOODS.**

Where goods have been sold by sample, an acceptance cannot be predicated on the mere receipt of the goods by the buyer without an opportunity for examination.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. § 168.*]

**9. SALES (§ 180*)—ENTIRE CONTRACT—ACCEPTANCE OR REJECTION.**

Where a contract for the sale of goods by sample is entire, the buyer cannot accept part of the goods and reject the balance, but, if he rescinds, he must reject all the goods, and place the seller in statu quo by returning or offering to return all that has come into his possession.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 469–472; Dec. Dig. § 180.*]

**10. SALES (§§ 180, 288*)—SALE BY SAMPLE—ACCEPTANCE—INDIVISIBLE CONTRACT.**

Where goods have been sold by sample under an indivisible contract, an acceptance of part of the goods after an opportunity for full inspection is an acceptance of the whole, though it is not a waiver of the warranty as to the kind or quality.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 469–472, 817–823; Dec. Dig. §§ 180, 288.*

Divisibility of contracts, see note to Saunders v. Short, 30 C. C. A. 470.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. SALES (§ 168*)—SALE BY SAMPLE—INSPECTION.

Where a contract for the sale of China clay by sample provided for delivery ex ship at Seattle, and there was no opportunity afforded the buyer to inspect the clay at the ship's side on the wharf when unloaded, it was the buyer's privilege to make the inspection at some other convenient place where a reasonable test could be secured.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. 168.*]

12. SALES (§ 180*)—SALE BY SAMPLE—BREACH OF WARRANTY—COUNTERCLAIM.

Where, in an action for the price of China clay sold to defendant by sample, defendant pleaded an acceptance of 861 casks and the rejection of 606 casks on the theory that the buyer might lawfully accept part of the goods and refuse part, and in doing so would be released of all liability as to the part rejected, and did not seek to recover on a counterclaim for a breach of warranty of kind or quality as to the clay rejected, the court should have granted judgment for plaintiff for the entire contract price on the theory that an acceptance of a part of the clay was tantamount to an acceptance of the whole, though not a waiver of the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 469–472; Dec. Dig. § 180.*]

13. SALES (§ 428*)—SALE BY SAMPLE—BREACH OF WARRANTY—ACCEPTANCE OF PART.

Where, on a sale of China clay by sample, the buyer accepted a part of the clay and rejected the balance as not conforming to the sample, the buyer's right to relief was limited to recoupment of damages for breach of the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223; Dec. Dig. § 428.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Action by H. L. E. Meyer and others, doing business as Meyer, Wilson & Co., against the Everett Pulp & Paper Company. Judgment for defendant (184 Fed. 945), and plaintiffs bring error. Reversed, with directions.

This is an action to recover for certain China clay sold and delivered by the plaintiffs to the defendant. The character of the questions involved necessitates setting forth the pleadings with some particularity. The complaint sets forth that on October 15, 1906, plaintiffs and defendant entered into a contract in writing, whereby the plaintiffs agreed to sell to defendant, and the defendant agreed to purchase, about 300 to 400 tons of 2,240 pounds each of China clay in casks of the brand known as "P. X. Y." at the rate of 70 cents per 100 pounds, net weight, ex ship at Seattle, Wash. The sale was made for shipment, per the ship Mozambique, from Leith, Scotland, or Tyne, England, to Seattle, delivery to be taken by the purchaser from alongside the vessel at once on discharge at Seattle, such clay to be at the risk of purchaser, and wharfage, if any, at Seattle to be for its account. Pursuant to the contract, plaintiffs delivered on board the ship Mozambique, at Newcastle-on-the-Tyne, England, 1,600 casks of China clay of the P. X. Y. brand, the gross weight of which was 425 tons, containing 952,000 pounds. The tare on the barrels was 25 tons, aggregating 56,000 pounds, making the total net weight 400 tons, containing 896,000 pounds. Thereafter the ship Mozambique sailed for Seattle, and prior to the 12th day of October, 1907, discharged at the dock of Galbraith-Bacon & Co., at Seattle the China clay so shipped, and the defendant, pursuant to said contract, took delivery thereof from alongside the ship and ex ship at Seattle, Wash. The amount demanded is $6,272, with interest from the 12th of October, 1907, at 6 per cent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The answer denies that the contract was entered into on the 15th of October, 1906, but avers that it was entered into on the 11th day of October; denies that the plaintiffs delivered or discharged at the dock of Galbraith-Bacon & Co. at Seattle 1,600 casks of China clay, P. X. Y. brand; denies that the China clay of the brand so delivered contained 896,000 pounds, or that the defendant took delivery thereof alongside of and ex ship at Seattle; and denies that the sum of $6,272, or any other sum except $3,375.12, is due the plaintiffs. For a further and separate answer, it is set forth that on or about the 11th day of October the defendant ordered of the plaintiffs 300 or 400 tons of P. X. Y. China clay, to be fully equal to sample which had theretofore been submitted by plaintiffs to the defendant, at the contract price of 70 cents per 100 pounds, ex ship at Seattle, duty paid; that said order was accepted by the plaintiffs on or about the 15th day of October, 1906, and thereafter the plaintiffs, in the month of October, 1907, delivered on the wharf of Galbraith-Bacon & Co. at Seattle, Wash., 1,600 casks of alleged China clay; that it is not customary in the clay trade to inspect casks on board the dock because of the expense and inconvenience, and, pursuant to the custom existing in the trade, the said clay was forwarded to the factory or plant of the defendant at Everett, Wash., where, upon inspection, it was found that of the clay 861 casks conformed to the sample submitted of P. X. Y. brand, and 739 casks were of an entirely different brand, and that the said brand of the 739 casks was far inferior to the sample submitted by the plaintiffs and upon which the contract was based; that, on discovery that there were included in the shipment of clay casks of different brand and of inferior quality, the defendant notified the plaintiffs thereof, and refused to accept the shipment; that at this time there remained on the dock at Seattle 253 casks, which it was agreed, after some correspondence, the defendant should take to its plant at Everett, without admission of liability for the shipment, and without expense to it if defendant's claim as to the inferiority of the clay should be proved correct; that of these 253 casks, 133 were of the brand inferior to sample, and are now, and at all times have been, held by the defendant as the property of the plaintiffs and subject to their orders; that the defendant has offered, and has been and is ready and willing, to return also the 606 casks inferior to sample to the wharf at Seattle, without expense to plaintiffs, but that plaintiffs have refused to accept the same or any portion thereof; that the value of the 861 casks like sample is $3,375.12, which defendant brings into the registry of the court, with interest thereon from October 12, 1907, to date of answer, amounting to $50.63, aggregating $3,425.75.

The plaintiffs by their reply admit that on the 11th of October, 1906, they contracted to deliver to the defendant 300 or 400 tons of P. X. Y. China clay, of a quality equal to sample theretofore submitted to the defendant, and that thereafter, in the month of October, 1907, they delivered on the wharf of Galbraith-Bacon & Co., at Seattle 1,600 casks of clay, but deny that a portion of the clay so delivered did not conform to sample, and deny the custom as it pertains to the inspection of casks on board dock at Seattle as set up in the answer. They also deny that any of the clay shipped was of a different brand, or inferior quality, from that indicated by the sample. And for a further and separate reply it is alleged that the clay which the defendant pretended to reject was accepted and taken by defendant to its manufacturing plant at Everett, Wash., and there stored by it, that the casks of clay pretended to be rejected were placed in the open, upon the river bank, without any shelter, and that the clay was exposed to the action of the rain and snow and the elements, and by reason thereof it deteriorated and became worthless and of no value, wherefore plaintiffs demand judgment as prayed in the complaint.

There was a trial respecting these issues before the court; a jury having been waived. The findings and judgment were for the defendant, and plaintiffs prosecute this writ of error therefrom. Other facts developed at the trial appear in the opinion of the court.

Williams, Wood & Linthicum, Isaac D. Hunt, and Peters & Powell, for plaintiffs in error.

J. A. Coleman, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVER-TON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The plaintiffs, to support the allegations of the complaint, offered the contract of sale in evidence, which, so far as it has relevancy here, is as follows:

"Portland, Oregon, October 15, 1906.

"Messrs. Everett Pulp & Paper Co., Everett, Wash.

"Bought of Meyer, Wilson & Co., 338 Sherlock Building.

"Terms: Net cash.

"Payable in U. S. gold coin as delivered.

"About three hundred (300) to four hundred (400) tons, of 2,240 lbs. each, China clay in casks, P. X. Y. brand at seventy cents (70 cts.) per 100 lbs. net invoice weight ex ship at Seattle, Wash.

"This sale is made for shipment per 'Mozambique' from Leith or Tyne (P. M. W. & Co., A. T.) to Seattle. Purchasers to take delivery of China clay from alongside vessel at once on discharge at Seattle, Wash.

*     *     *     *     *     *     *     *     *     *     *

"China clay at risk of purchasers as soon as landed.

"Wharfage, if any, at Seattle, Wash., to be for account of purchasers."

The plaintiffs having rested, the defendant offered in evidence, and they were received over the objection of plaintiffs, two letters, one bearing date Portland, Or., September 29, 1906, written by Meyer, Wilson & Co. to the Everett Pulp & Paper Company, and the other bearing date October 11, 1906, written by the Everett Pulp & Paper Company to Alfred Tucker, who represented the plaintiffs. The former reads as follows:

"Dear Sirs: Referring to the correspondence we had heretofore with you regarding China clay, we now have the pleasure of advising you that we send you under separate cover a sample marked 'P. X. Y.' of an English China clay which the makers believe matches your own sample very well, and we trust that you will find it so. It is probable that we could work your order for a quantity of not less than 400 to 500 tons of this P. X. Y. China clay in one-half ton casks with extra iron hoops, which packages have in our previous shipments proved very satisfactory, indeed, at the price of 76½ cents per 100 lbs. ex ship at Seattle; wharfage, if any, on the goods for buyers account, as usual. Will you kindly let us know whether you are inclined to place an order with us on this basis."

The latter reads:

"Confirming the writer's telephonic communication to you today; please enter our order for 3/400 tons of P. X. Y. China clay, to be fully equal to the sample which you have submitted to us, at the price quoted by you, viz.: 70c per 100 lbs., ex ship at Seattle, duty paid.

"It is understood that this is to be packed in 5-cwt. casks reinforced with iron hoops, and is for November/December shipment."

The first and third assignments of error are based upon the introduction of these letters, and they raise the question, not only as to the admissibility of such letters, but as to whether the contract sued on evidenced a sale by sample. It is insisted that the contract of sale is complete within itself, and that whatever correspondence took place previously between the parties relative to the purchase and sale of the clay has become merged into the contract, and therefore

that the contract alone speaks of the transaction, and not the previous negotiations with respect thereto.

[1] As a general rule, it is undoubtedly true that all prior negotiations, whether in writing or by parol, or partly in writing and partly by parol, looking to the consummation of a contract or agreement between parties, become merged into the agreement when finally concluded and executed, and thereafter the previous writings or proposals and statements pro and con of the parties are incompetent and inadmissible to vary the force, effect, or terms of the consummated agreement. The principal reason upon which the rule is based is that:

"When parties, after whatever conversation or preparation, at last reduce their agreement to writing, this may be looked upon as the final consummation of their negotiation, and the exact expression of their purpose. And all of their earlier agreement, though apparently made while it all lay in conversation, which is not now incorporated into their written contract, may be considered as intentionally rejected. The parties write the contract when they are ready to do so, for the very purpose of including all that they have finally agreed upon, and excluding everything else, and make this certain and permanent." 2 Parsons on Contracts (7th Ed.) p. 679.

This conforms to the rule as stated in Davis Calyx Drill Co. v. Mallory, 137 Fed. 332, 338, 69 C. C. A. 662, 668 (69 L. R. A. 973), that:

"Where the written contract of the parties is complete in itself, the conclusive legal presumption is that it embodies the entire engagement of the parties, and the manner and extent of their obligations, so that parol evidence of other terms is inadmissible to extend, modify, or contradict it."

See, also, Rucker v. Bolles, 133 Fed. 858, 862, 67 C. C. A. 30.

[2] But, whatever the rule may be upon the subject, the letters offered indicate that the letters "P. X. Y." were used to designate a sample of English China clay, which was then submitted to the purchaser for its inspection, and not to designate any brand of China clay known to the market or in commerce. In other words, the letters were employed by the sellers merely to designate the sample which they were submitting to the buyer for inspection, and not any known commercial brand of the commodity sold in the market by such brand. The idea is undoubtedly confirmed by the subsequent testimony of Mr. Johnson, who says that the casks of clay received were none of them marked "P. X. Y.," but all with a "Diamond A. Great Britain." He further states that the letters simply referred to the samples of clay submitted for the buyer's examination. These letters, therefore, serve not to contradict, vary, add to, or take from the contract of sale in the least, but only to explain what, without their aid, is obscure and ambiguous, for which purpose they were clearly admissible. Such was the purpose for which they were admitted by the Circuit Court.

[3] When read in the light of these letters and the subsequent testimony of Johnson, it is perfectly manifest that the contract is evidentiary of a sale by sample, and not of a certain quality of material by a designation known to the trade or in commerce. Assignments of error Nos. 1 and 3 are therefore not well taken.

[4] Assignments of error Nos. 4, 9, and 10 relate to testimony ad-

mitted over objection, which tended to show that the clay rejected contained a larger percentage of grit, which rendered the paper with which it is used for the manufacture of certain kinds of writing paper spotted and unmerchantable, and, further, that so large a percentage of grit had the effect to wear out quickly the appliances for manufacturing the paper, thus rendering the manufacture of the finished article much more expensive. The purpose of this testimony was to show that a large portion of the clay delivered did not conform to the sample. It was therefore relevant to the inquiry, and no error was committed in admitting it.

Assignment of error No. 13, which we take up now because of its logical sequence, is based upon a motion interposed by plaintiffs when the parties respectively had rested for judgment on the pleadings, and for verdict and judgment upon the case; the reasons assigned therefor being: First. That the defendant has pleaded in its answer, and its evidence proved, that it had accepted 861 casks of clay which conformed to the sample submitted, and that it had rejected 606 casks which were alleged to be inferior to the sample. Second. That, under and by the pleadings, the defendant has not counterclaimed for any damages sustained by reason of the alleged breach of warranty, and hence none can be allowed. This motion was overruled, and judgment was entered to the effect that plaintiffs take nothing by the action save and except the money deposited with the clerk by the defendant, namely, $3,424.75, and that plaintiffs pay the costs of the action accruing subsequent to making the deposit.

Counsel for plaintiffs insist that there was error in denying this motion, and rely upon four propositions to support their contention: First. That a discharge of the clay ex ship, or at the side of the vessel upon the wharf at Seattle, was a delivery of the entire consignment. Second. That the contract of sale was entire, and that an acceptance by the buyer of a part of the clay was an acceptance of the whole. Third. That, where there is an attempted rescission of the contract, a subsequent retention of the goods works a waiver of the rescission. Fourth. That under the pleadings defendant is entitled to nothing by way of counterclaim or recoupment.

These propositions entail a discussion of the law relating to sales by sample, and somewhat of the rules of pleading relative to recoupment for damages. It should be premised that the court neither made findings of fact nor rendered any conclusions of law.

[5] The general conclusion that the plaintiffs should take nothing except the money deposited is tantamount to a general verdict of a jury, and we are not permitted to look into the evidence for determining whether the conclusion was properly deduced.

[6] We could not do so even if it were proper, because the record does not contain all the evidence adduced at the trial. Nor can the written opinion of the court be considered as a finding of facts. It shows the conclusion of the judge upon the facts and the law, but cannot be treated as a finding of conclusions of either fact or law.

[7] A sale by sample is tantamount to an undertaking on the part of the seller that the goods sold shall be similar both in nature and in

quality to the sample exhibited, and imports an implied warranty to that effect. There is some discussion in the books as to whether the rule extends so far as to require correspondence in both kind and quality, but we take it that the broader acceptation of the rule is, under the authorities, the better one, and that the implied warranty is of both kind and quality. See Wadhams v. Balfour, 32 Or. 313, 51 Pac. 642, where many of the authorities are collated and discussed. See, also, Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 393, and 35 Cyc. 405. Necessarily there is a condition attending such a sale that the buyer shall have reasonable and, fair opportunity for examining or inspecting the bulk of the goods sold and comparing them with the sample exhibited, and thus determining for himself whether they are in fact of the same or similar kind and quality as represented. .

[8] An acceptance cannot be predicated of the mere receipt of the goods, unless the opportunity has been offered for examination, as the right of examination attends the sale as a condition precedent to acceptance, unless waived by some act or stipulation of the buyer. The condition may be regarded as fundamental, and absolute acceptance cannot be expected or enforced without the buyer be given or may have exercised such privilege.

[9] It is doubtless the rule that, where the contract is entire, the buyer has not the right to accept the goods in part and reject them in part. Such a contract is not thus severable. The goods must be accepted as a whole or rejected as a whole. It is also true that a party under such a contract cannot accept and keep part of the goods, and at the same time rescind the contract. To rescind, he must place the seller in statu quo by returning or offering to return the goods, not a part of them, but all that has come to his possession, so as to restore previous conditions. Failing this, the purchaser cannot insist upon rescission.

[10] Furthermore, as a general principle, an acceptance of a part of the goods under an indivisible contract of sale, where there is opportunity for full inspection, is tantamount to an acceptance of the whole, but such acceptance, or even a general acceptance, is not a waiver of warranty as to kind or quality attending the sale. See in support of these propositions Buckeye Buggy Co. v. Montana Stables, 43 Wash. 49, 85 Pac. 1077, 117 Am. St. Rep. 1032; Manss-Bruning Shoe Mfg. Co. v. Prince, 51 W. Va. 510, 41 S. E. 907; Clark v. Baker, 5 Metc. (Mass.) 452; Morse v. Brackett, 98 Mass. 205; Reynolds v. Palmer (C. C.) 21 Fed. 433; Crane Co. v. Columbus Const. Co., 73 Fed. 984, 20 C. C. A. 233; Lenz v. Blake, 44 Or. 569, 76 Pac. 356; Nash v. Weidenfeld, 41 App. Div. 511, 58 N. Y. Supp. 609, 611.

Now, as to the remedies of the buyer, it is said in Pope v. Allis, supra, that a sale by sample "amounts to an undertaking on the part of the seller with the buyer that all the goods are similar, both in nature and quality, to those exhibited, and, if they do not correspond, the buyer may refuse to receive them, or, if received, he may return them in a reasonable time allowed for examination, and thus rescind

the contract." And in Beirne v. Dord, 5 N. Y. 95, 98 (55 Am. Dec. 321):

"When a contract for the sale of goods is made by sample, it amounts to an undertaking on the part of the seller, with the purchaser, that all the goods are similar both in nature and quality to those exhibited: and, if they be not, the purchaser may either rescind the contract, by returning the goods in a proper time, or keep them and recover damages for the breach of such warranty."

Then again, in Clark v. Baker, supra (5 Metc. [Mass.] p. 461), which involved a sale of corn with warranty, the court says:

"The plaintiff's redress was easy—either to rescind the contract by returning all the corn purchased and suing for the money advanced, or by action upon his warranty, for the injury sustained by the delivery of an article inferior to that warranted."

[11] The Circuit Court was of the opinion that the sale in question was a sale by sample. Being such, the buyer had the right to inspect the clay before acceptance. In the exercise of this right, if reasonable opportunity was afforded, it should have made the inspection upon the wharf at the ship's side when unloaded. But, if no such opportunity was there afforded, the buyer was privileged to make the inspection at some other place, where convenient and reasonable test could be had, so that it might satisfy itself of the kind and quality of the article consigned to it; and it may be that it was not unreasonable to take the clay to its mill at Everett for the purpose of making the test. This being a question of fact to be disposed of under the evidence, we are not in a position to pass upon it, and hence cannot say that the trial court erred respecting its conclusion in the premises, whatever it may have been.

This disposes as well of the sixth, seventh, eighth, and twelfth assignments of error. The sixth relates to the testimony of Johnson respecting the defendant's taking possession of the clay upon the dock at the ship's side and transporting it to Everett; the claim being with reference thereto that the act was an acceptance of the clay on the part of the defendant. The seventh, eighth, and twelfth relate to evidence adduced, over objection, touching an alleged custom existing in Seattle that clay of the kind is inspected elsewhere than upon the wharf where discharged from the ship. We simply say that these are questions of fact, and are not properly before us for determination.

[12] This brings us to a consideration of plaintiffs' motion for judgment on the pleadings. The contention is that defendant cannot recoup damages (which is, in effect, what was granted by the judgment of the Circuit Court) because it has not set up the same by way of counterclaim. Breach of warranty respecting the kind and quality of goods sold should be set up by way of counterclaim showing the damages suffered by reason thereof, thereby seeking to recoup the same against any demand the plaintiff may have against the defendant. Nash v. Weidenfeld, supra; Sloan Commission Co. v. Henry A. Fry & Co., 4 Neb. (Unof.) 647, 95 N. W. 862. In some jurisdictions the breach is regarded as a defense pro tanto, as upon a failure of

consideration; in others it cannot be pleaded as a defense, the goods being retained, but only as a counterclaim. 35 Cyc. 442.

But, however this may be, a careful analysis of the answer discloses its true and only purpose and character. The defendant, "further answering the complaint," first sets out the contract according to its understanding: That the clay, when delivered on the wharf of Galbraith-Bacon & Co. at Seattle, was forwarded to defendant's factory at Everett, whereupon, on inspection, 861 casks were found to conform to the sample submitted (P. X. Y. brand), and 739 casks to be inferior to the sample; that defendant notified the plaintiffs immediately, and refused to accept the shipment; that at the time defendant discovered that clay of an inferior grade was included in the shipment 253 casks still remained on the wharf; that, plaintiffs being notified that the shipment was not in accordance with the sample, after some correspondence it was agreed that the defendant should take to its plant at Everett the remaining 253 casks, without admission of liability for shipment, and without expense to it if defendant's claim as to the inferiority of the clay should prove to be correct; that of the 253 casks, 133 were of the poorer brand, inferior to sample, and are now held by defendant as the property of plaintiffs, subject to their order, together with the 606 casks inferior to sample also in the hands of the defendant; that defendant has offered, and is now ready and willing, to return the 606 casks to the wharf at Seattle without expense to plaintiffs, and here and now offers to do so; that the value of the 861 casks is $3,375.12, and interest thereon from October 12, 1907, to date of answer, $50.63; that defendant herewith brings into the registry of the court $3,425.75, and prays that plaintiffs recover no judgment, and that the action be dismissed without costs to the defendant. This answer in both theory and practical effect proceeds upon the one idea that the buyer might lawfully accept the goods in part and refuse them in part, and in doing so would be relieved of all liability as to the part rejected. In the mind of the pleader the question of damages cut no figure, and it was assumed that it was only a matter of returning the clay rejected, or tendering a return, and that thereby the defendant acquitted itself of liability to the extent of the price of the clay rejected. Such is not the law. An acceptance of a part of the clay, which is shown by the answer, was tantamount to an acceptance of the whole, but such acceptance was not a waiver of the warranty as to kind and quality. The plaintiffs were not bound to receive back the rejected clay, but are liable in damages for a breach of their warranty, the measure of which is the difference in value of the clay comporting with the sample, or the consideration stipulated, and value of the rejected or inferior article, not the entire consideration or value of the clay rejected. The answer excludes all idea of damages of this sort, and theoretically proceeds upon a wholly contrary idea, namely, that of a rejection of the clay in part and a rescission of the contract pro tanto, which, as we have seen, could not be done.

[13] After an acceptance of a part of the clay, defendant's relief lay wholly in recoupment of damages for breach of the warranty.

The answer, while alleging facts which show a breach in part of the contract to deliver clay of a certain kind and quality, alleges no damages, and prays for none. and it cuts off inquiry as to the rightful and proper damages to which the defendant is entitled by way of recoupment—that is to say, the difference between the value of the sound article and the value of the inferior article not conforming to the sample—and leaves the plaintiffs no choice but to take back the clay rejected, and relieve the defendant from liability for the entire purchase price therefor. The Circuit Court, while deciding the case upon the theory that defendant was entitled to recoup damages sustained for breach of warranty. seemed to be of the view that an offer to return the inferior clay entitled the defendant to damages equal to the entire purchase price, which is an erroneous view of the law. We quote from the court's opinion:

"The measure of damages which the vendee may claim for breach of an implied warranty of quality is the difference between the actual value of the property delivered and the higher value of the warranted quality; and, if there is no other evidence of value, the price agreed to be paid will be regarded as the value of the property of the quality warranted. In this case the defendant having offered to return the inferior clay and to hold it subject to disposition by the plaintiffs. the contract price is the measure of damages which it is entitled to recoup."

We are of the opinion that the answer as it stands, proceeding as it does solely upon the theory of a rescission in part of the contract of sale, and of a right to recover the consideration price pro tanto, and excluding by its very draft all idea of damages for breach of warranty, entitled the plaintiffs to judgment on the pleadings. At least, if damage for breach of warranty was the real defense, the plaintiffs were entitled to notice of such a defense, through appropriate answer, and to an opportunity to make contest upon the basis of the proper measure of damages in the premises. This, it is quite evident, the plaintiffs were not accorded. The Circuit Court was therefore in error in not granting the motion for judgment.

Since the defendant in error now asks, if the cause is remanded, that it be allowed to amend its answer, the judgment of the Circuit Court will be reversed, with direction to said court to allow the defendant leave to amend its answer so as to entitle it to recoup such damages as it has sustained by reason of any breach of plaintiffs' warranty.