## MUELLER v. GOLLOBER. (No. 6989.)

(Court of Civil Appeals of Texas. San Antonio. June 14, 1923. Rehearing Denied June 29, 1923.)

**1. Attachment ⬅️8—Statute relating to attachment in action on unliquidated claims held applicable.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 247a, relating to attachments in actions based on unliquidated claims against nonresidents, *held* applicable to an action brought against a nonresident for the breach of a contract to sell reclaimed government blankets, so as to sustain an attachment by plaintiff purchaser of certain undelivered blankets still in the hands of the railroad and belonging to defendant.

**2. Sales ⬅️134—Buyer of reclaimed blankets held entitled to reject those not up to contract and sue for payments made less actual value of goods.**

Under a contract for the purchase of reclaimed government blankets after payment by the purchaser of 10 per cent. of the purchase price, *held*, that he had a right to reject such blankets when received as did not come up to the terms of the contract, and sue for the money paid for the rejected blankets after giving credit for the price he subsequently received for them at a sale after notice to the vendor.

**3. Sales ⬅️170—Breach of contract to sell reclaimed government blankets held to warrant buyer's suit for damages.**

Under a contract for the sale of reclaimed government blankets, where the number of blankets delivered did not comply with the terms of the contract, and some of those delivered were soiled and damaged and not like sample, *held*, that the buyer had a right to treat the contract as ended and sue for damages and for the missing blankets, and that the seller in such an action had no right after his breach to demand specific performance of the remaining part of the contract.

**4. Specific performance ⬅️94—Attachment defendant after execution of replevin bond and removal of goods held not in position to demand specific performance of contract.**

Where the buyer of reclaimed government blankets, after delivery of a part thereof, declared the contract had been breached, sued for damages, and attached as property of defendant a subsequent shipment·in the hands

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the railroad, and defendant thereafter executed a replevin bond and removed the blankets so attached from the jurisdiction of the court and without the state, *held*, that such defendant could not thereafter demand specific performance by the buyer of the remainder of the contract because by removal of the blankets he rendered himself unable to make a sufficient tender of performance himself.

**5. Sales �köö418(1)—Buyer suing for delivery of defective goods under contract held not entitled to recover as part of damage freight charges on such defective goods.**

In an action for damages for the breach of a contract to sell government blankets in that defendant delivered some goods which were defective and not up to sample, *held*, that plaintiff was not entitled to recover as part of his damages freight charges paid on such defective goods, since under the contract he was required to pay the freight charges, as some of the blankets were not rejected.

**6. Costs �köö169—One attaching goods in hands of carrier and required to pay freight charges before delivery to sheriff held entitled to recover such charges.**

Where the purchaser of reclaimed government blankets, after a partial delivery, declared the contract breached, sued for damages, and attached a subsequent shipment in the hands of the railroad as property of seller, and in order to enable the sheriff to take possession of such attached property paid freight charges as required by Rev. St. art. 6558, *held*, that he was entitled to recover such freight charges; the payment being deemed to have been made in the interest of the seller.

### On Motion for Rehearing.

**7. Attachment ⊙köö239—Execution of replevy bond in attachment does not preclude defendant from quashing writ for defects in affidavit.**

The execution of a replevy bond in an attachment does not have the effect of discharging the attachment or precluding the defendant from quashing the writ of attachment for defects in the affidavit.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by H. Mueller against J. Gollober. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Chas. F. Guenther, Jr., and Douglas, Carter & Childers, all of San Antonio, for appellant.

Hertzberg, Kercheville & Thompson, of San Antonio, for appellee.

COBBS, J. H. Mueller, appellant, a resident of Bexar county, brings this suit against J. Gollober Mercantile Company, appellee, a nonresident of the state of Texas and a resident citizen of the state of California.

The suit was on an alleged breach of a contract whereby appellant contracted with appellee for the purchase of 5,000 government reclaimed blankets like sample at $3.25 each, 500 to be shipped at once by express to appellant at San Antonio, Tex., C. O. D., and 500 to United States Sales Company, Los Angeles, Cal., C. O. D., by express at once, and 2,000 to be shipped to each place by freight, at once, bill of lading attached; appellee to draw on appellant for 10 per cent. of price through San Antonio Bank.

Appellee shipped 490 blankets by express to San Antonio and 490 by express to Los Angeles, and sent drafts to each place for $490 to cover price on blankets for each shipment.

Appellee shipped 2,030 blankets to Los Angeles by freight, bill of lading attached to draft. All these drafts were paid by appellant. Upon unpacking the blankets it was discovered by appellant 256 of the blankets were torn, soiled, and damaged and not like sample, with 6 blankets short.

Appellee was notified by appellant of the damages, but appellee refused to make the damages good.

Appellant held the 256 damaged blankets to appellee's order for a year notifying appellant and finally sold them. Alexander v. Walker (Tex. Civ. App.) 239 S. W. 311, 312.

So, briefly stated, the petition seeks a recovery for:

"256 damaged blankets refused by appellant
at $3.25 ..................................... $ 832 00
Express and freight charges on said 256
blankets rejected ......................... 51 20
Purchase price of 6 blankets short......... 19 50
Freight charges paid on attached blankets 356 55
Earnest money, or 10 per cent. deposit.... 1,625 00
                                                ———————
                                             $2,884 25

—but in said pleading offered a credit for the net value of the damaged blankets sold to plaintiff, after having held same for one year subject to defendant's order. In the alternative, in his pleading, appellant prayed for damages on account of the breach of contract on the part of appellee, and in the tenth paragraph asked, in the alternative, that the $356.-55 freight item paid on blankets attached be taxed as costs if direct recovery therefor was refused."

Appellant filed affidavit and bond for attachment and caused a writ of attachment to be levied upon the 2,030 blankets shipped by freight to San Antonio in the possession of the railroad company and was required by said company to pay the freight thereon of $356.55 before same would be delivered to the sheriff under the said writ of attachment. Article 6558, R. S.

On January 19, 1921, appellee filed a replevy bond, took possession thereunder of said blankets, and shipped them back to California. The blankets were not forthcoming on the trial, but counsel for appellee sought to make a tender thereof by saying they were in storage in California subject to the order of appellant.

---

⊙kööFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Upon motion of appellee the attachment was quashed:

"On November 16, 1922, appellee filed his second amended original answer directing special exceptions to the following items in plaintiff's demand:

"Third special exception complained of the $356.55 freight charges paid on blankets taken under writ of attachment.

"Fourth special exception complaining of the $51.20 freight and express charges on damaged blankets rejected.

"Fifth special exception complaining of the $1,625 item of deposit sought to be recovered by appellant.

"Sixth special exception addressed to the tenth paragraph of plaintiff's amended petition, asking, in the alternative, that the $356.55 freight item paid on attached blankets be taxed as costs of suit.

"Appellee also included in said answer a cross-action for specific performance against appellant on the freight shipment of blankets to San Antonio.

"The trial court sustained appellee's special exceptions third, fourth, fifth, and sixth (as above outlined), and overruled appellant's general demurrer to appellee's cross-action for specific performance, and sustained appellee's motion to quash the attachment; appellant duly excepting to the court's action on each of said demurrers and on the motion to quash attachment.

"The court gave appellee judgment on his plea for specific performance for $6,467.50, being the contract price of 1,990 blankets at $3.25 each. On this judgment he credited the $448 awarded to appellant, and also, after deducting $16.25, the price of 5 sample blankets (for which appellee had not pleaded), from the $1,625 deposit, he credited the balance, to wit, $1,608.75 thereon, leaving a total balance adjudged against appellant and for appellee of $4,410.75, and ordered that all writs necessary be issued by the clerk to enforce the decree, and adjudged that, after payment of the judgment, appellant would be entitled to possession and delivery f. o. b. San Antonio of 1,996 blankets, of the kind and character called for by the contract, and directing appellee to deliver same to appellant within 25 days after the payment of the judgment."

[1] The first complaint made by appellant is that the court erred in quashing the writ of attachment, on the ground that the appellant's cause of action was based upon an unliquidated demand. Vernon's Sayles' Ann. Civ. St. 1914, art. 247a, provides for the issuance of attachments in just such cases. Harrington Lumber Co. v. Smith, 44 Tex. Civ. App. 363, 99 S. W. 110; Jones v. Hunt, 74 Tex. 657, 12 S. W. 832; Taylor et al. v. Bewley, 93 Tex. 524, 56 S. W. 746.

If the above statute does not control this case and we see no reason why it does not, it is apparent that the amount of damages is susceptible of proof based upon certain and existing facts and do not depend upon uncertain contingencies not provided for by the contract. The items of damages sued for arise out of the contract which of itself furnishes a rule for their ascertainment.

When appellee gave the replevy bond and took possession of the attached goods and carried them out of the state and out of the jurisdiction of the court, it was an affirmation of the attachment, in which bond he obligated himself and surety, to wit:

"Should the defendant be condemned in the above-entitled action, he shall satisfy the judgment which may be rendered therein or shall pay the estimated value of the property. The estimated value was $1,891.50." Article 258, R. S.

Such bond being given, the attachment proceedings became immaterial to the rights of appellee. 6 Corpus Juris, p. 338, § 696; 6 Corpus Juris, p. 352, § 749.

[2] The contract was very definite. Appellant was contracting to buy from appellee 5,000 blankets at the stipulated price of $3.25 for each blanket, 500 to be shipped to appellant here (San Antonio) C. O. D. and the same number to United States Sales Company., Los Angeles, Cal., C. O. D., all shipped by express. Then 2,000 to be shipped each place by freight at once, bill of lading attached. Ten per cent. of the price of the 5,000 blankets was paid by appellant, on draft drawn by appellee. Undoubtedly the appellant had the right to reject such blankets as did not come up to the terms of the contract, and sue for the money paid for the rejected blankets giving credit for the price for which they were sold. Alexander v. Walker, supra.

While the contract called for 500 blankets which were to be shipped each respectively to San Antonio and to Los Angeles, by express only, 490 each were shipped to each place which was not in compliance with the contract. The contract called for only 2,000 to be shipped to Los Angeles by freight; whereas, 2,030 blankets were shipped, not in compliance with the contract.

The contract called for 2,000 to be shipped to San Antonio by freight; whereas, 2,030 were shipped, not in compliance with the contract.

The bill of lading on express shipment to San Antonio called for 490 blankets; whereas, only 484 were delivered, not in compliance with the contract.

Out of 3,010 blankets included in the first three shipments, less the 6 blankets short, 256 were soiled and damaged and not "like sample" by which they were sold.

[3] Upon this clear and uncontradicted breach, the appellant had the legal right to treat the contract ended and sue for the damages and for the missing blankets, and any other damages flowing therefrom, and appellee had no right to require specific performance. Appellant did not accept the inferior blankets. Streeper v. Frieberg, Klien & Co., 3 Willson, Civ. Cas. Ct. App. § 240; C. J. vol. 13, p. 658, par. 736; Miller v. Sullivan,

14 Tex. Civ. App. 112, 33 S. W. 695; 23 R. C. L. p. 1443, § 267; Jackson v. Rotax Motor Co., 20 Ann. Cas. 523; Brunswig v. East Point Milling Co., 11 Ga. App. 9, 74 S. E. 448; 24 R. C. L. § 564, p. 284; Morrison v. Leiser, 73 Mo. App. 95, 98; Ungerer & Co. v. Louis Maull Cheese & Fish Co., 155 Mo. App. 95, 134 S. W. 59; Lindsborg v. Danzero (Mo. App.) 193 S. W. 606.

[4] Appellant complains at the ruling of the· court in not sustaining their exception to appellee's cross-action seeking specific performance of the contract as to the last shipment of 2,030 blankets which were attached in this suit by appellant and replevied by appellee and removed out of the ·jurisdiction of this state and this court and while being so in California "in open court during the trial, counsel stating in open court that said blankets are in storage in California subject to the order of plaintiff," and in the holding of the court as follows:

"The evidence further showing, and ,it appearing to the court that defendant is entitled to a specific performance of the contract as to the last shipment of blankets not to exceed 1,990 blankets, at $3.25 per blanket, or $6,467.50, and it appearing that said blankets are now in San Francisco, Cal., in storage, held subject to the orders of plaintiff, and that the previous shipments made to plaintiffs were 6 blankets short, and that the defendant is entitled to deduct cost of 5 sample blankets sent to plaintiff from the deposit of $1,625 made by plaintiff to defendant, leaving a net deposit of $1,608.75 to be deducted from the contract price of the remaining blankets, in addition to the damages heretofore awarded plaintiff, amounting to $448; and it further appearing to the court that 1,996 blankets are required to fill out the original order for 5,000 blankets, including the shortage of 6 blankets, proven by the plaintiff:

"It is therefore ordered, adjudged, and decreed by the court that the defendant, J. Gollober, do have and recover of and from the plaintiff, H. Mueller, on his cross-action judgment for specific performance of the contract as to the last shipment of blankets, and that the defendant, J. Gollober, recover of and from said plaintiff. H. Mueller, the sum of $4.858.75, from .which shall b'e deducted the amount of damages awarded to the plaintiff, amounting to $448, leaving a net amount due the defendant under said contract of $4,410.75, with interest thereon at the rate of 6 per cent. per annum, from November 15, 1920, being the date of first delivery by defendant of ·said blankets at San Antonio, Tex., until paid, for all of which defendant is given judgment against the plaintiff, together with all costs incident to the issuance and levy of writ of attachment, and incident to the cross action, of defendant against plaintiff. ·

"It is further ordered and decreed by the court that upon payment of said judgment to defendant that plaintiff shall be entitled to delivery and possession of 1,996 more of said blankets, of the kind and quality contracted for f. o. b. San Antonio, Tex., and the defendant is ordered and directed by the court to make said· delivery within 25 days after the payment of said judgment in, favor of the defendant."

When appellee took this property out of the possession of the officer as provided by article 258, he gave the bond required conditioned as follows:

"Now therefore, we the said J. Gollober, as principal, and the United States Fidelity & Guaranty Company, as surety, acknowledge ourselves bound to pay to H. Mueller, plaintiff in said attachment the sum of eighteen hundred, ninety-one and $50/100$ ($1,891.50) dollars, conditioned that should the defendant be condemned in the above-entitled action, he shall satisfy the judgment which may be rendered therein or shall pay the estimated value of the property with lawful interest thereon from the date of this bond." ·

There was no authority for appellee to make any such proposed tender. His duty was fixed by law as to the disposition of the replevied property. There was in fact no legal tender of the specific property. "In order to make a valid tender of either money or chattels, the thing to be tendered must be actually produced and offered to the party entitled thereto, a mere offer to pay being insufficient; and the tenderer must place the money or property in such a position' that his control over it is relinquished for a sufficient time to enable the tenderee, if he so desires, to· reduce it to possession by merely reaching out and laying hold of the money or thing; and a person is not bound to say whether or not he will accept the money or thing until it is produced." It would not have been possible for appellant to reach out and lay hold of the tendered articles then in California within the contemplation of a tender.

Appellant was entitled under this contract to recover his damages caused by the breach of appellee's contract in not delivering to him the goods in accordance with the contract, and on account of that breach was entitled to be made whole.

The appellee was entitled to recover damages for the difference between the agreed price for the damaged blankets and for the price they would bring in the market; but no contention is made in regard to the price for which they were sold, and appellee seems to accept that amount as a proper measure for credit.

[5, 6] Of ·course, it was their duty to give notice to appellant and tender back before selling, advising appellant they were being held subject to their order as damaged goods and as not complying with the contract. This was done. We do not think, however, appellant would be entitled to recover the $51.20 on the rejected blankets because under the contract he was required to pay.the freight charges. as some of the blankets were not rejected. We think appellant was entitled to recover the freight charges of $356.55 paid

on the attached goods. This was required to be paid before the railroad would surrender the possession to the sheriff. Article 6558, R. S. It was a payment, so to speak, in the interest of appellee. He might have left them with the sheriff as a compliance with his contract. But by replevying them he confirmed the attachment. For this sum of $356.55 freight charge appellee was primarily liable to the railroad. We also hold that appellant was entitled to recover so much of the earnest money of 10 per cent. deposit, or $1,625, less whatever amount it may be found he would owe appellee, if any.

We have considered the record very carefully, and think the court has erred in the disposition of the case. We cannot render judgment and will not do so in the shape of the pleadings of both parties and under the facts disclosed. Therefore this case will be reversed and remanded for another trial.

### On Motion for Rehearing Made by Both Parties.

We will first dispose of appellee's motion. The first ground is that the court did not carefully read the authorities cited in their brief. This is the usual complaint of the loser. We must confess our surprise that such a complaint comes from so eminent and able lawyers who must know better. We read every case cited by counsel carefully and every proposition made. It must not be supposed because we make no comment upon or set out all the authorities counsel in any case may cite that they have not been well considered and not overlooked. If we do not think they are applicable and give us no aid in the solution of the question, we can see no need to cite them and load the opinion down with the citation of authorities and the discussion of cases and matter we do not believe applicable.

The next complaint counsel sets forth in 16 assignments, all being similar and to the effect that the court erred in sustaining the assignment of appellant; but no reason is given for such general complaint.

Again appellant makes the contention that this court was in error in stating article 247a, Vernon's Sayles' Ann. Civ. St. 1914, providing for attachment based on unliquidated demands as applicable, because it is only applicable to cases where personal service cannot be obtained in this state, and it was not alleged or shown that personal service could not be obtained in this state; and amount of the bond not fixed by the judge or clerk issuing, etc.

The affidavit for the attachment expressly recited:

"That defendant is not a resident of the state of Texas, but on the contrary is a resident of the city of San Francisco, state of California."

So there is nothing in appellant's contention on the point. ·

[7] There is nothing in the holding of this court to the effect that a replevin bond in an attachment has the effect of discharging the attachment or precluding the defendant from quashing the writ of attachment for defects in the affidavit, and after reading the cases cited by appellee of 6 Corpus Juris, p. 338, § 296; Moss v. Katz, 69 Tex. 411, 6 S. W. 764, citing other cases, are not applicable or are to the contrary of our holding. Appellee has entirely misconceived the holding of this court. By this attachment appellant secured service on the nonresident defendants who came in, answered, and pleaded over, then by virtue of this replevy bond removed the goods from the jurisdiction of this court and out of the state. Of course, so far as appellant was concerned he was protected by the replevy bond. But when appellee took this method to get the goods out of the possession of the sheriff, and remove the goods to another state where they were still in his possession and were out of this state on the day of the trial, he had placed himself where he could not surrender the goods, and demand that appellant receive them in compliance with the contract of sale. If he had left them with the railroad or left them in the hands of the sheriff, in custodia legis, he would be in quite a different position.

We do not hold that the replevy bond cuts off his right to show a performance of his contract. It may be that every blanket in that shipment complied with the contract, but the removal of those goods from the custody of the law and from the state operated to prevent appellant from an inspection thereof. Of course, that is still an open question as to whether the goods shipped met the conditions of the contract and what damages, if any, resulted from appellant's refusal to receive them or by reason of any damages resulting to appellant by reason of the fact the goods shipped were damaged. In holding that there was no objection to the finding of the court that the value of the damaged blankets was put by the court at $1.50 seems to be reiterated and acquiesced in by appellee's motion for a rehearing. No question was raised on the point and that value was not contested, and hence appellee is therefore mistaken when he says we were not familiar with the facts in the case in so holding.

We will leave open as a matter of course any material fact to be determined in this case or as to any breach of the contract. And in reply to appellant's motion, we decline to reverse and render for the reason stated in this and the original opinion.

Aside from our express holding upon certain law issues set out, every other fact matter is left open. The motions for rehearing of both parties are overruled.