## KANSAS FLOUR MILLS CORPORATION v. McDONALD.

### No. 968.

Court of Civil Appeals of Texas. Waco.

Nov. 20, 1930.

Seale & Seale, of Centerville, for appellant.

M. L. Bennett, of Normangee, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellant, Kansas Flour Mills Corporation, in the justice court to recover damages from appellee, V. C. McDonald, for the alleged breach of contracts for the sale by appellant and the purchase by appellee of certain flour. The trial in said court resulted in judgment for appellee. Appellant perfected an appeal to the county court.

Appellant is a foreign corporation, having a sales agency in Kansas City, Mo. It has no office in Texas, but its transactions therein are confined to interstate business. Appellant owns and controls the Cherokee Mills Company, located at Cherokee, Okl. Appellee, on the solicitation of a sales agent of the Cherokee Mills, signed and delivered an order contract for the purchase of 200 barrels of flour to be delivered in 48-pound cotton sacks. The only stipulation indicating the kind or quality of the flour so ordered was that it should be branded "Made Rite." Appellee therein agreed to give instructions for the shipping of such flour on or before the 31st day of December, 1926, and further agreed that, if he failed to give shipping instructions, said mills might terminate the contract and claim damages for its breach. It was stipulated therein that all shipments should be paid for on presentation of sight drafts with bills of lading attached. Said order was tendered subject to confirmation by the Cherokee Mills, and upon its receipt was duly confirmed by said mills. Thereafter appellee signed another order contract for the purchase of an additional 210 barrels of flour, with like provisions, except that shipping instructions were to be given on or before May 1, 1927. This order was also promptly confirmed by said mills. Appellee, prior to his signing the first order, had never handled any flour branded "Made Rite." At the time appellant's agent solicited said order, he exhibited to appellee a sample of such flour. The sample exhibited showed a good family flour of the highest grade. Appellee gave instructions under the first order for the shipment of a carload of said flour. Said shipment on arrival was found to be good family flour of a high grade and in all things equal to the sample exhibited by appellant's soliciting agent at the time the order was given. Appellee thereafter gave instructions for the shipment of another carload of said flour. This shipment, or a large part thereof, was found on arrival to be yellowish in color, of low grade, and not fit for ordinary family use. It was not of the same class or quality of flour as said sample nor said first shipment. Appellee made prompt complaint to appellant's soliciting agent of the quality of the flour received in the second shipment. The testimony does not disclose any offer on the part of appellant or its agents to make amends for this breach of contract. Neither does it disclose any assurance that, if appellee should give further shipping instructions, the flour shipped thereunder would be of the kind and quality shown by said sample or said first shipment. Notwithstanding such default, appellant demanded that appellee furnish shipping instructions for additional flour. Appellee thereupon wired appellant to cancel said orders.

The trial in the county court again resulted in judgment in favor of appellee; hence this appeal.

Opinion.

██ Appellant's first assignment of error complains of the action of the court in permitting appellee, over its objection, to testify that "Made Rite" flour, from the sample exhibited to him at the time he entered into the contract and just prior thereto, showed to be a good family flour of the highest grade. Appellant, by propositions submitted thereunder, contends that the effect of such testimony was to vary and add to the terms of the written contract and to show by parol that such sale was by sample. Appellee, as above stated, testified that, when he was approached by appellant's soliciting agent, he was wholly unacquainted with any such brand of flour as "Made Rite"; that said so-

liciting agent in that connection showed him a sack of flour branded "Made Rite," and that the same was a good family flour of the highest grade; that he thereupon signed and delivered the orders made the basis of this suit. The only description of the kind or quality of flour to be shipped in pursuance of such orders was that it should be branded "Made Rite." It is true said orders do not contain any recital of the fact that a purported sample of "Made Rite" flour was submitted, nor that they were based thereon. Said orders, considered as contracts, were of course wholly executory. The flour to be selected and appropriated thereto by appellant was wholly at its election. While the finding by the trial court in favor of appellee was general, it must be held to include a finding that said orders were signed and delivered by appellee upon the representation by appellant's soliciting agent that the "Made Rite" flour therein ordered was a good family flour of the highest grade, as indicated by said sample. The rule applicable in such cases is stated in 1 Williston on Sales (2d Ed.) p. 514, part of section 254, as follows: "But if a written contract for goods is procured by representing ·that the goods described in the writing are like a sample which is exhibited, it ·seems that parol evidence should be admitted to prove these representations and that the seller should be liable as warranting the truth of them."

The author cites, in support of the text, Pike v. Fay, 101 Mass. 134, and Meyer v. Everett Pulp. Co. (C. C. A.) 193 F. 857. Under the authorities cited, the testimony complained of was admissible in the connection in which it was offered and considered by the court.

Appellant's second assignment of error complains of the action of the court in rendering judgment for appellee. Appellant presents a proposition thereunder in which it contends that the testimony showed that appellee had accepted and retained the two cars of flour shipped to him, the last of which contained bad flour, and that, having done so, he could not decline to receive subsequent deliveries. The contract provided that the flour should be shipped to appellee and paid for by him on draft with bill of lading attached. There was no cause for complaint of the first carload. When appellee discovered the condition of the second carload, he had already paid therefor in full according to the contract price. Appellant was a foreign corporation and not suable in Texas. We do not think, under such circumstances, that appellee waived any rights by retaining the bad flour and suffering the loss occasioned by the defective quality thereof, rather than rejecting the same after having paid therefor and seeking to recover the price paid by suit in some foreign jurisdiction. See, in this connection, Mueller v. Simon (Tex. Civ.

App.) 183 S.W. 63, 64, par. 2; Mueller v. Gollober (Tex. Civ. App.) 252 S.W. 1076, 1078, pars. 2 and 3; Barron County C. & P. Co. v. Niana Pure Food Co., 191 Wis. 635, 211 N. W. 764, 766, par. 4, 50 A. L. R. 69. Appellee made prompt complaint of said shipment of inferior flour, but appellant apparently ignored such complaint. Under these circumstances, appellee had the right to treat the delivery of the inferior flour as a breach of the contract and to refuse to receive and pay for subsequent deliveries contemplated thereby. McDonald v. Kansas City Bolt & Nut Co. (C. C. A.) 149 F. 360, 363, 8 L. R. A. (N. S.) 1110, and authorities there cited; Enterprise Mfg. Co. v. Oppenheim Oberndorf & Co., 114 Md. 368, 79 A. 1007, 1011, pars. 2 and 3, 38 L. R. A. (N. S.) 548; Lindsborg Milling & Elevator Co. v. Danzero (Mo. App.) 193 S. W. 606, par. 1; Lyons Milling Co. v. Farmers' Supply Co., 212 Mo. 390, 245 S. W. 572, 573, par. 2; Ungerer & Co. v. Louis Maull Cheese & Fish Co., 155 Mo. App. 95, 134 S. W. 56, 59; Newton v. Bayless Fruit Co., 155 Ky. 440, 159 S. W. 968, 971, pars. 3 and 4. Appellant cites, in support of its contention, 24 R. C. L. p. 285, part of section 564, which reads as follows: "Thus if the default of the seller in the delivery of an installment is in the quality of the commodity delivered and the installment has been accepted and retained by the buyer, the latter cannot for such reason alone repudiate the contract and refuse to accept further delivery of installments *of the required quality.*" (Italics ours.)

In this connection we further quote from said section as follows: "It seems, however, that if the conduct and acts of the seller are such as to justify a reasonable belief on the part of the buyer that the seller intends thereafter to continue to tender or deliver a quality inferior to that required by the contract, the buyer may terminate the contract for such prior default."

See, also, Barron County C. & P. Co. v. Niana Pure Food Co., supra, 191 Wis. 635, 211 N. W. page 766, par. 3, 50 A. L. R. 69.

The testimony, as before stated, shows that appellee made prompt complaint of the inferior quality of the second carload of flour and that appellant ignored the same and continued to demand orders for further shipments. Appellee's testimony that the flour contained in the second car was inferior and unfit for family use was corroborated by two other witnesses. Appellant made no attempt to rebut such testimony. Neither its employees who milled nor those who sacked and shipped said second carload of flour were called to testify in this case. Appellant merely introduced the deposition of its general sales manager, who testified that "Made Rite" flour was a high quality family flour, that appellant had an excellent trade therein, and, so far as he knew, such flour had always given satisfaction. Said witness, however, fur-

ther testified in that connection that he spent his time in appellant's general office in Kansas City, and that the answers given in said deposition were based solely on information from the records of his office and from his knowledge of the flour-milling business. Appellant offered no assurance that future deliveries, if authorized by appellee, would be of the required quality. We think the general finding in favor of appellee made by the trial court should be construed to include a finding that appellee was reasonably justified in believing that future deliveries under said contracts would be of inferior quality and in terminating the contracts because of the prior default; there being evidence tending to sustain such finding. Hines v. Kansas City Life Ins. Co. (Tex. Civ. App.) 260 S.W. 688, 690, par. 2; and authorities there cited.

The judgment of the trial court is affirmed.